1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11

12

13 FIDELITY NATIONAL FINANCIAL, INC.,          Civil No.    09cv0140-DMS (CAB)
   et al.,

14                              Plaintiffs,    **ORDER GRANTING IN PART AND
                                               DENYING IN PART PLAINTIFF'S**
15              v.                             **MOTION TO COMPEL DISCOVERY
                                               RESPONSES**
16 NATIONAL UNION FIRE INSURANCE
   COMPANY OF PITTSBURGH, PA., et al.,         **[Doc. No. 154]**
17
                               Defendants.
18

19        On December 28, 2010, the Court held a hearing on plaintiff Fidelity National Financial's

20 ("Fidelity") motion to compel discovery responses.  [Doc. No. 154.]  Defendant National Union Fire

21 Insurance ("National") filed an opposition.  [Doc. No. 162.]  Andrew Agati, Esq., and Oliver Dunforth,

22 Esq., appeared for Fidelity.  David Reynolds, Esq., appeared for National.  Having considered the

23 submissions of the parties and the arguments of counsel, the motion is **GRANTED** in part and **DENIED**

24 in part.

25        Fidelity alleges that its insurer National acted in bad faith by refusing to provide a coverage

26 determination for Fidelity's claims.  Fidelity seeks an order requiring National produce non-privileged

27 documents in National's claim file that post-date the filing of the complaint in this matter and that

28 National provide information about reserves set by National in response to Fidelity's claims.  Further,

Fidelity challenges National's decision to withhold a document that was communicated to excess insurers based on privilege.

National represented that it in response to Fidelity's requests it produced all communications with the excess insurers, regarding Fidelity's claims, except one communication from National's coverage counsel, David Bergenfeld to National and the excess insurers.  [Doc. No. 162, at 4.]  National describes the letter as providing advice to National and the excess insurers about the "drafting of a nonwaiver agreement between plaintiffs and all the fidelity bond insurers."  [*Id.*]  National withheld the document claiming it is an attorney-client confidential communication and  is protected from disclosure by the common interest rule.

The common interest rule protects confidential attorney-client communications when shared with others for purposes of a common defense.  *U.S. v. McPartlin,* 595 F.2d 1321, 1326 (7th Cir. 1979.) National contends that the carriers who received the confidential Bergenfeld communication are parties to a joint strategy and the communication is covered by the common interest rule.  Fidelity challenges that contention and the assertion of the privilege.  [Doc No. 154, at 9.]  The Nonwaiver Agreement submitted by National (lodged as Exhibit 7 to Kenneth Watnick's Declaration) demonstrates that National and the excess carriers are aligned in a common strategy and are working together in response to Fidelity's claims.  Fidelity's objection to the assertion of privilege regarding the Bergenfeld communication is overruled and the motion to compel production of the document is **DENIED**.

The balance of Fidelity's motion addresses National's withholding of certain portions of the claim file, No. 165-031035.  National has withheld documents created after the date the complaint was filed, asserting that after the complaint was filed Fidelity obtained a stay of the litigation and would not allow National to communicate with the underlying claimants.  National contends it has only been able to collect information through the litigation process.  National therefore claims that post-filing documents in the file are protected by privilege or work product protections.  [Doc. No. 162, at 8-9.]

Unusual aspects of this litigation, including the stay during the underlying litigation and criminal investigations, have undoubtedly complicated the ability of the carriers to investigate Fidelity's claims. Regardless of the manner in which the information was collected, however, documents with factual information regarding Fidelity's claim created after the filing of the complaint do not become privileged

09cv0140

1   simply because the facts may have been collected by counsel as part of the litigation process.  *Upjohn*

2   *Co. v. United States*, 449 U.S. 383, 395-96 (1981) (the privilege does not protect the disclosure of facts);

3   *Ivy v. Outback Steakhouse, Inc.,* 2007 U.S. Dist. LEXIS 40801 (W.D. Wash. 2007) *10 (any document

4   related to fact gathering may be discoverable).

5          The motion to compel National's production of non-privileged, responsive documents created

6   after the filing of the complaint is **GRANTED**.  National will produce any such documents that have

7   been withheld solely because they were created following the filing of the complaint, no later than

8   **January 10, 2011**.

9          Fidelity also moved to compel further response to an interrogatory it served regarding reserves

10  set by National in response to Fidelity's claims.  [*See* Doc. No. 154.]  Interrogatory No. 4 requests

11  National "[i]dentify any and all documents relating to reserves set by You for Your Claim No. 165-

12  031035, including but not limited to when the reserves were set, the amounts of reserves set, and any

13  changes to the amounts of reserves."

14         National generally objected on the basis the interrogatory was overbroad in time and scope.  It

15  limited its response to a time frame prior to the filing of the complaint.  National then further objected

16  that reserve information prior to the filing of the complaint is not relevant because the claims made by

17  Fidelity prior to the filing of the complaint have been withdrawn.  [Doc No. 155-1, Ex. 6.]  With regard

18  to reserve information created in connection with post-litigation proofs of loss, National contends the

19  information is privileged as it "necessarily incorporates the advice and analysis of counsel."  [Doc. No.

20  162, at 7.]  National also states, however, that insurance companies must set reserves, in part, to comply

21  with state regulations and the amount is also regulated.  [*Id.* at 5.]

22         Fidelity asserts that National acted in bad faith from the beginning, refusing to provide a

23  coverage determination of Plaintiff's claims, and National's actions regarding setting reserves and the

24  amounts are relevant to its bad faith claim.  On balance, the Court finds the possible relevance to

25  Fidelity's claim outweighs the burden to National to respond to the interrogatory.  The motion to compel

26  a further response to Interrogatory No. 4 is **GRANTED**, in that National will identify for Claim No.

27  165-031035, when reserves were set, the amounts of the reserves set and any changes to the amounts of

28  the reserves from the time the claim was made to the present, no later than **January 10, 2011**.

09cv0140

1       Finally, Fidelity moved for production of a redacted section of a document produced by National

2  identified as an October 2007 Executive Claim Summary.  National did not address this request in its

3  opposition but represented during the hearing that the redacted portion was withheld because it related to

4  reserve information.  National will produce the redacted section of the Executive Claim Summary no

5  later than **January 10, 2011**.

6       **IT IS SO ORDERED.**

8  DATED:  January 4, 2011

                               **CATHY ANN BENCIVENGO**
                               United States Magistrate Judge

4

09cv0140