1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

8
9
10
11
12
13
14
15
16

| | |
|---|---|
| FIDELITY NATIONAL FINANCIAL, INC., CHICAGO TITLE INSURANCE CO., and CHICAGO TITLE CO.,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURG, PA, et al.,<br><br>Defendants. | CASE NO. 09-CV-140-GPC-KSC<br><br>ORDER AFFIRMING IN PART AND REVERSING IN PART MAGISTRATE JUDGE'S ORDER DENYING SANCTIONS<br><br>[Doc. No. 398] |

17
18
19
20
21

Now before the Court is Plaintiffs' (hereinafter "FNF" or "Chicago Title") timely appeal from the Magistrate Judge's September 25, 2012 order declining to impose sanctions on Defendant[1] (hereinafter "NU") for obtaining and using a confidential memorandum prepared by *Cumis* counsel in the underlying litigation. The Court heard oral argument on December 6, 2013.

22
23
24
25
26

For the reasons stated below, the Court affirms in part and reverses in part. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. Pro. 72(a). The Court holds that NU cannot use the attorney's confidential legal memorandum assessing a settlement offer under the Errors and Omission policy ("E&O," also called the Miscellaneous Professional Liability Policy) against FNF in this action on the separate Financial Institution

27
28

---

[1]The other four defendants have been dismissed. [Doc. Nos. 120, 121, & 142]

Bond ("FIB").  California's *Cumis* statute required FNF to provide NU's E&O claims department with the attorney's candid and complete evaluation of whether or not to settle the Jr. Holdaways' lawsuit against FNF.[2]  Cal. Civil Code § 2860(d).  FNF was required to share the case evaluation memorandum with NU to obtain the benefits of the E&O policy.  Consequently, the insurer is limited to using the privileged document to evaluate the settlement of the underlying action in connection with that particular insurance policy.  The Court concludes that FNF did not directly or impliedly waive the attorney-client privilege in relation to any other insurance policy, including the FIB issued by NU.

Factual Background

In 2006, victims of Rollo Norton's Ponzi scheme began suing FNF (and its subsidiary Chicago Title Co. or "CTC") for negligence, breach of fiduciary duty, and related torts for its failure to recognize and prevent hundreds of fraudulent escrow transactions.

"Because of the size of FNF's and its subsidiaries' operations and because insurance companies will underwrite risks only up to a certain dollar amount," FNF purchased a "tower of insurance."  Loverich Decl. ¶ 4.  FNF purchased several types of "Executive Risk" coverage, including Directors and Officers, E&O, and FIB policies.  *Id.* ¶ 3.  For each category, FNF bought a primary policy and four levels of excess policies.  *Id.* ¶ 4.  Different insurance carriers issued various types of policies.  *Id.* ¶ 9 (NU provided the primary E&O, the third excess E&O, and the primary FIB policies for the 2005-2006 term).  This motion concerns the E&O and FIB categories.  NU was the primary carrier in these two categories, but eight other insurance companies provided coverage to complete the layers in this "tower."  *Id.*

In July 2006, FNF notified all of its several carriers in its "tower of insurance" of the Norton claims.  FNF anticipated a loss exceeding $113 million.  In

---

[2]"Jr. Holdaways" refers to Keith and Joni Holdaway.  "Sr. Holdaways" refers to Robert and Cumorah Holdaway.

regard to the two primary policies issued by NU, FNF sought coverage under the $15 million E&O policy, which generally applies to third-party losses caused by negligent employees, and its $15 million FIB, which generally applies to first-party loss caused by dishonest employees.

The E&O policy obligated NU to defend the insured against third-party lawsuits.  Ex. 3 to Agati Reply Decl. (Insuring Agreement I.B).  [Doc. No. 374-4] FNF tendered defense of the underlying actions to NU under the terms of the E&O policy.  NU reserved its right to contest indemnity and to recoup defense costs as to claims that were not covered or that exceeded the policy limits.

By contrast, the FIB does not provide for defense costs.  FNF, however, tendered a claim for indemnification.  NU agreed to investigate but reserved its right to contest coverage under the FIB policy, a dispute that led to the instant lawsuit.

To comply with its duty to defend under the terms of the E&O policy and in light of its reservation of rights, NU hired an independent law firm (Miller Starr) to defend FNF in the underlying lawsuits.  The Court refers to Miller Starr as "*Cumis* counsel."  *See San Diego Federal Credit Union v. Cumis Ins. Society, Inc.*, 162 Cal. App. 3d 358 (1984) (holding that an insurance company must hire an independent attorney to represent its insured when the carrier reserves the right to deny coverage at a later date).

In January 2007, FNF asked the two claims adjustors at NU to create a "firewall" between the E&O and FIB claims departments.  The FIB claims adjustor (Wolin) agreed.  Ex. 3 to Agati Decl. (1/17/07 entry).  The E&O adjustor (Stolzenberg) refused but said he would give it his best effort.  NU's outside coverage attorney (Stankowski), however, expressly "declined" to establish a firewall.  Ex. 29 to Watnick Opp. Decl.  [Doc. No. 347-2]  NU also said:  "As a courtesy, NU will make its best effort to accommodate your request that separation be maintained between and among the claims file and handler in this [E&O] matter and the Financial Institution Bond."  *Id.*

As the underlying lawsuits developed, FNF apprised NU of their status. Because NU was providing a defense under the E&O policy, FNF was required to provide NU with information relevant to the defense of the underlying actions.  *See* Ex. 3 to Agati Reply Decl. (E&O Policy § VI.B; Endorsement 8; Litigation Management Guidelines §§ III.B.1, IV & Attachment A § I.C).  In particular, FNF provided NU with the voluminous deposition transcripts of several Chicago Title employees, many of Norton's victims, Norton himself, and two individuals (Medhi and Kaplan), who purchased Crown Point condominiums.

In May 2007, the Jr. Holdaways offered to settle their suit for $19 million. FNF tendered the settlement to NU under the E&O policy.  NU replied that it did not have enough information to evaluate the reasonableness of the Jr. Holdaways' offer. Ex. 4 to Agati Reply Decl. (May 23, 2007 letter).  [Doc. No. 374-5]  NU demanded a "written evaluation or analysis of the Insureds' potential liability and damages" including but not limited to "(1) an analysis [of] the Insureds' view of the factual and legal basis for plaintiffs' claims; (2) an analysis of Insureds' view of the strengths and weaknesses of the defense case."  *Id.*  In particular, NU wanted evidence that the Jr. Holdaways' damages arose out their Crown Point investments with Norton.  *Id.*  NU stated it would not contribute to claims that were not covered and reminded FNF of the reservation of rights.  *Id.*

In response, *Cumis* counsel prepared a legal memorandum analyzing the wisdom of settling the underlying lawsuit in light of the "evidence developed in discovery" and the amount of damages "which may potentially be awarded."  *Id.* The June 27, 2007 memorandum is marked "ATTORNEY-CLIENT PRIVILEGE." Ex. 7 to Watnick Opp. Decl.  Because this document is filed under seal, the Court will not quote the contents.  It is sufficient to note that it contains *Cumis* counsel's evaluation of whether to settle the Jr. Holdaway lawsuit or instead proceed to jury trial.  The Court refers to the document as the "Settlement Evaluation Memorandum."

FNF's  outside coverage attorney (Kenna) mailed the Settlement Evaluation Memorandum to NU's outside coverage counsel.  Ultimately, NU contributed to the Jr. Holdaway settlement under the E&O policy.  Ex. 6 to Agati Decl. [Doc. 318-2]  The following year, FNF sued NU for breaching the separate FIB policy.  During discovery, NU produced the non-privileged documents from *both* claims files to FNF.

It appears that the Settlement Evaluation Memorandum lay dormant in NU's E&O file until 2011.  *See* Agati Decl. ¶ 5; Ex. 8 to Agati Decl. (privilege log includes "Miller Starr liability analysis of underlying claims of Holdaway Jr." as protected by attorney-client privilege, work product, and Cal. Civ. Code § 2860).  In June 2011, NU reviewed the contents of the E&O file to prepare two senior executives (Tatulli and Smith) for depositions.  The parties disagree about the purpose of these depositions, an issue that the Court discusses below.  In any event, during the depositions, FNF asked the senior executives about NU's E&O claims investigation.  FNF showed the executives several letters from the E&O file.  *E.g.*, Ex. 26 to Watnick Opp. Decl. (Tatulli Depo. at 142-53).  Most of the letters were written by either NU's or FNF's outside coverage counsel and marked "privileged." *E.g.*, Exs. 29 & 30 to Watnick Opp. Decl.  Tatulli repeatedly testified that he had not seen any of these letters before that day.  *E.g.*, Ex. 26 to Watnick Opp. Decl. (Tatulli Depo. at 142-53).  Notably, FNF did *not* introduce, quote, or refer to *Cumis* counsel's Settlement Recommendation Memorandum at any time during the depositions, or at any other time during this litigation.

Thereafter, NU gave the document to its expert witness (Felton).  In July 2011, the expert's initial report cited the Settlement Evaluation Memorandum from the E&O file as evidence that the FIB policy's Discovery and Termination provisions protected NU from covering the Norton claims.  Ex. 35 to Watnick Opp. Decl.  NU also cites the document as evidence in its motion for summary judgment. //

Magistrate Judge's Decision

FNF asked the Magistrate Judge to sanction NU for breaching the alleged agreement to establish a firewall between the separate claims files.  FNF sought an order to compel NU to return the document, destroy all copies, and preclude the use of the document for any purposes in this litigation.  [Doc. No. 318]

The Magistrate Judge agreed with FNF that the Settlement Evaluation Memorandum "constituted a legal opinion of Chicago Title's potential liability in the underlying lawsuit.  Thus, it was a confidential communication between client and lawyer pursuant to California's attorney-client statute.  Cal. Evid. Code § 917(a)."  Order Denying Motion for Sanctions at 4-5.  [Doc. No. 395]

The Magistrate Judge agreed with NU, however, "that the privilege was voluntarily waived when the Memo was provided to NU's E&O claims adjuster and its outside counsel during the claims process."  *Id.* at 5.

The Magistrate Judge rejected FNF's argument that it had a legal duty to provide the Memo to its insurer pursuant to California's *Cumis* statute.  Cal. Civil Code § 2860(d).  The cooperation paragraph of that statute states:

> When independent counsel has been selected by the insured, it shall be the duty of that counsel and the insured to disclose to the insurer all information concerning the action except privileged materials relevant to coverage disputes, and timely to inform and consult with the insurer on all matters relating to the action.  Any claim of privilege asserted is subject to in camera review in the appropriate law and motion department of the superior court.  Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

*Id.*  Another relevant provision states:

> Where the insured selects independent counsel pursuant to the provisions of this section, both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation.  Counsel shall cooperate fully in the exchange of information that is consistent with each counsel's ethical and legal obligation to the insured.  Nothing in this section shall relieve the insured of his or her duty to cooperate with the insurer under the terms of the insurance contract.

*Id.* § 2860(f).  The Magistrate Judge held that "FNF was under a duty to cooperate

but, pursuant to § 2860(d) of the California Civil Code, it was *not* under a duty to
provide privileged material." Order, *supra*, at 5.[3]  Citing California Evidence Code
§ 912(a), the Magistrate Judge held that FNF waived the privilege by disclosing,
"without coercion," the communication to NU.  Order, *supra*, at 5-6.  The
Magistrate Judge concluded the analysis of the *Cumis* statute as follows:

> Based on California law, FNF's duty to cooperate in the
> evaluation of the E&O claim did not create a duty to produce the
> Memo to NU.  Rather, the production of the Memo by FNF to NU
> constituted the voluntary disclosure of an attorney-client privileged
> document to a third party, which constituted a waiver of the privilege.

*Id.* at 6.

Turning to FNF's invocation of the "common interest" doctrine, the
Magistrate Judge held that "where a reservation of rights has been made, there is no
'common interest' and as such, the production of privileged information to the
insurer constitutes a waiver of the privilege." *Id.* at 7.

The Magistrate Judge also rejected FNF's assertion that NU agreed to
provide a firewall between the E&O claims department and the FIB claims
department. *Id.* at 7-8.  In any event, the Magistrate Judge found it "evident" that
FNF had used other privileged documents from the E&O claims file to support its
position in this litigation. *Id.* at 8-9 (citing Def.'s Exs. 26 & 30).  The "shield and
sword" doctrine prevented FNF from using certain documents from the E&O claims
file to its advantage and simultaneously objecting to NU's use of the Memo from
the same file. *Id.* at 9.

FNF appeals the decisions on the firewall, voluntary waiver, and the sword
and shield doctrine.  It also contends the Magistrate Judge violated the protective
order by quoting the Memo.

---

[3]FNF correctly observes that the Order misquoted the statute by omitting the
qualifying phrase "relevant to coverage disputes" from the exception for "privileged
materials." *Compare* Order, *supra*, at 5 (stating that statute "excepts the provision of
privileged material" and that "FNF was under a duty to cooperate but, pursuant to §
2860(d) of the California Civil Code, it was *not* under a duty to provide privileged
material") *with* Cal. Civil Code § 2860(d) ("except privileged materials relevant to
coverage disputes").

09CV140

1    The district court reviews a magistrate judge's order on a non-dispositive

2  matter under the "clearly erroneous or contrary to law" standard.  28 U.S.C. §

3  616(b)(1)(A); *see Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002).

4                                    Discussion

5  A.  Firewall between NU's Two Separate Claim Departments

6    FNF argues that the Magistrate Judge erroneously found there was no

7  agreement to create a firewall between the two claims departments.

8    The Court concludes that this finding is not clearly erroneous in light of the

9  express refusal by NU's outside coverage counsel to establish a firewall.  Ex. 29 to

10  Watnick Opp. Decl. (Feb. 7, 2007 letter).  There was no "meeting of the minds" to

11  maintain a firewall between the E&O claims department and its FIB claims

12  department.  FNF acknowledged that it understood "that National Union does not

13  intend to create firewalls between these claims."  Ex. 30 to Watnick Opp. Decl.

14  (Feb. 22, 2007 letter).

15    NU's cooperation was voluntary, and it appears that it did honor its promise

16  to "make its best effort" to maintain separation.  *E.g.*, Ex. 6 to Watnick Opp. Decl.

17  (requesting FNF's consent to contact FIB claims handler for limited purpose of

18  evaluating whether other insurance reduced NU's exposure on the E&O policy).

19  B.  Waiver of Attorney-Client Privilege under the *Cumis* Statute

20    The Court concludes that the Magistrate Judge misinterpreted California's

21  *Cumis* statute in relation to the Settlement Evaluation Memorandum and therefore

22  erroneously held that FNF voluntarily waived the attorney-client privilege.[4]

23    1.  The Settlement Evaluation Memorandum

24    Before applying the statute, it is helpful to characterize two aspects of the

25  document at issue.

26    First, the Settlement Evaluation Memorandum is protected by the attorney-

27  ─────────────

28    [4]Federal courts apply the law of the forum state to define the attorney-client privilege in a pure diversity case.  Fed. R. Evid. 501; *Platypus Wear, Inc. v. K.D. Co., Inc.*, 905 F. Supp. 808, 810-11 (S.D. Cal. 1995).

client privilege because it contains the legal analysis and mental impressions of an attorney. *Fireman's Fund Ins. Co. v. Super. Ct.*, 196 Cal. App. 4th 1263, 1273 (2011); *OXY Res. Cal. LLC v. Super. Ct.*, 115 Cal. App. 4th 874, 890 (2003).  The Court ratifies the Magistrate Judge's holding on this point.

At the hearing, the parties confirmed that the underlying facts recited in the Settlement Evaluation Memorandum are not themselves protected by any privilege. Those facts were obtained during discovery in the State court proceedings.

FNF also confirmed that the document does not contain private attorney-client communications.  [Doc. No. 318 at 11]

Thus, the reason the document is privileged is because an attorney assessed the evidence against his client, analyzed the strengths and weaknesses of the underlying lawsuit, and offered a recommendation regarding the settlement value. In order to analyze the wisdom of settling, the attorney discussed how a jury might interpret the evidence.

Second, the Settlement Evaluation Memorandum concerns the *defense* of the underlying action.  It is not a *coverage* analysis.

In an attempt to manage the conflict inherent in the unique relationship between *Cumis* counsel, the insured, and the insurer, the law attempts to draw a distinction between issues related to coverage and those related to the defense of the underlying action.  Leo P. Martinez, Coverage Advice:  The Missing Piece of the *Cumis* Puzzle, 44 Tort Trial & Ins. Prac. L.J. 63, 77-78 (Fall 2008) ("In California, the suggestion is that a lawyer's coverage advice is distinctly separate from a lawyer's defense of an insured.").  *Cumis* counsel must cooperate with the insurer on matters relevant to the defense, as the insurer is paying the legal expenses. *Cumis* counsel, however, is not hired to advise either the insured or the insurer about coverage.  *Id.* at 74-75; Douglas R. Richmond, Independent Counsel in Insurance, 48 San Diego L. Rev. 857, 895 (Summer 2011).  As a practical matter, however, it may be unavoidable that *Cumis* counsel will discover information that

bears on whether the policy covers the loss while he litigates the third-party's

lawsuit.  *Assurance Co. of Am. v. Haven*, 32 Cal. App. 4th 78, 87 (1995); Martinez,

*supra*, 44 Tort Trial & Ins. Prac. L.J. at 77.  The *Cumis* statute reiterates that the

insured's independent attorney is not obligated to disclose "privileged materials

relevant to coverage disputes."  Cal. Civil Code § 2860(d); *see supra* footnote 3.

Here, the Settlement Evaluation Memorandum did not analyze the language

of the E&O policy to determine if it covered or excluded the Jr. Holdaway claim.

*Cumis* counsel drafted the memorandum for the purpose of fulfilling his "limited"

duty to the insurer in connection with the defense of third-party's lawsuit.

*Assurance Co.*, 32 Cal. App. 4th at 88, 90.  While an unstated purpose of the

memorandum was to persuade NU to contribute funds from the E&O policy, the

subject matter is how to litigate the underlying action.[5]  Even though NU reserved

its rights to later seek reimbursement for uncovered claims, NU had a duty to decide

whether to accept the settlement offer, continue negotiations, or proceed to trial

*without considering coverage.  Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489,

497-503 (2001); *Johansen v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 15 Cal. 3d 9,

16 (1975) (duty of good faith requires that, "in deciding whether or not to

compromise the claim, the insurer must conduct itself as though it alone were liable

for the entire amount of the judgment"); *Crisci v. Sec. Ins. Co. of New Haven,

Conn.*, 66 Cal. 2d 425, 429 (1967) (same).

---

[5]The *Cumis* statute permits the independent attorney to withhold  "privileged material relevant to coverage disputes."  Cal. Civ. Code § 2680(d).  Based on the express exception for coverage issues, "[o]ne could argue that *Cumis* counsel and the insured still may be required to disclose privileged materials that are not relevant to coverage disputes to the insurer, in satisfaction of their obligations under the statute." Wendy L. Feng & Geoffrey T. Painter, *Cumis* Privilege & the Risk of Waiver:  A Policyholder's Perspective, 19 No. 4 Prac. Litigator at 22 (July 2008).  "However, at least one court has read the provision to allow the policyholder considerable leeway regarding the information it discloses to its insurer." *Id.* (citing *First Pac. Networks, Inc. v. Atlantic Mutual Ins. Co.*, 163 F.R.D. 574, 584 (N.D. Cal. 1995)).

Because the Settlement Evaluation Memorandum discusses the *defense* of the underlying action, this motion does not require the Court to explore the scope of the express exception for "privileged materials relevant to coverage disputes."

2.   *Cumis* Counsel was Required to Share the Settlement Evaluation
Memorandum with NU

The Court concludes that the Magistrate Judge erred when it defined the
scope of the *Cumis* counsel's duty to cooperate with the insurer in regard to the
Settlement Evaluation Memorandum.

The statute imposes a duty on *Cumis* counsel "to disclose to the insurer all
information concerning the action." Cal. Civ. Code § 2860(d); *Assurance Co.*, 32
Cal. App. 4th at 83 & n.6 ("Section 2860 prescribes certain duties of disclosure,
consultation and cooperation that *Cumis* counsel owes to the insurer."); *Employers
Ins. of Wausau v. Albert D. Seeno Constr. Co.*, 692 F. Supp. 1150, 1158 & n.11
(N.D. Cal. 1988) (*Cumis* counsel owes insurer the limited duties set forth in statute).
Most of the shared information will concern routine matters, such as the status of
discovery. *First Pac.*, 163 F.R.D. at 579-80 (*Cumis* counsel's limited obligations to
the carrier "are strictly of an informational character"); Richmond, *supra*, 48 San
Diego L. Rev. at 888-93 (discussing contractual obligation of independent counsel
to fully inform carrier of "factual and legal developments related to the defense,"
strategy, expenses); *see Rockwell Int'l Corp. v. Super. Ct.*, 26 Cal. App. 4th 1255,
1265-66 (1994) (approving of distinction between "all factual knowledge or
documentation" relevant to the underlying lawsuit from "all legal advice obtained")
(citing *N. River Ins. Co. v. Philadelphia Reins. Corp.*, 797 F. Supp. 363, 369 (D.
N.J. 1992)).

The duty, however, also encompasses evaluation documents that enable the
carrier to decide whether to settle the lawsuit for the amount negotiated by *Cumis*
counsel. *Assurance*, 32 Cal. App. 4th at 88 (listing "evaluations"); *Lectrolarm
Custom Sys., Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 570-71 (E.D. Cal. 2002)
(statute requires insured's attorney to share with insurer information about
"potential liability, probability of success, and possible range of damages");
Michael Paul Thomas, et al., Cal. Civ. Prac. Torts § 36.11 (2013) (cooperation

clause requires insured to disclose information "for proper purposes, *i.e.*, to enable the insurer to determine whether it should settle the claim against the insured"); Hon. H. Walter Croskey, et al., Cal. Prac. Guide:  Ins. Litig., ch. 7B-L, ¶ 7:851 ("counsel must disclose both to the insurer and to the insured all facts necessary to enable them to make an informed decision regarding settlement") (emphasis omitted).  The Court concludes that the statute imposes a mandatory duty on *Cumis* counsel to cooperate by providing the insurer with his legal assessment of whether or not to settle an underlying lawsuit.[6]  *See First Pac.*, 163 F.R.D. at 580 (duty to disclose depends on whether the communication was "necessary in order to preserve an entitlement to have the carrier pay for *Cumis* counsel").

When *Cumis* counsel recommends that the insurer accept or reject a settlement offer, he necessarily gives his legal opinion about whether a jury would likely find the insured liable on the facts developed during discovery and the likely exposure to compensatory and punitive damages. *Fireman's Fund*, 196 Cal. App. 4th at 1273 (confidential communication includes "a legal opinion formed and the advice given by the lawyer").  Of course, *Cumis* counsel has an ethical obligation to his client, the insured, to carefully avoid revealing any confidential client communications. *Employers Ins.*, 692 F. Supp. at 1157-58 & n.9 (*Cumis* counsel must respect his ethical duties toward his client, the insured); *Frazier v. Super. Ct.*, 97 Cal. App. 4th 23, 34 (2002); *Am. Mut. Liab. Ins. Co. v. Super. Ct.*, 38 Cal. App. 3d 579, 592 (1974) (same, decision predates the *Cumis* statute).  It might be possible for *Cumis* counsel to redact "information shared in confidence" from the evaluation memo, but it is impossible for the attorney to evaluate the insured's potential liability and damages without revealing his mental impressions and giving

---

[6]The terms of the E&O policy parallel the statute by requiring the insured's trial attorney to "provide an evaluation of the case, including the potential verdict value, a discussion of the insured's liability and the likely apportionment of fault."  Ex. 3 to Agati Reply Decl. (E&O Policy, Attachment to Endorsement 8, Litigation Management Plan § I.C).  NU's litigation guidelines states that "[t]he Companies expect that *counsel* will provide us with *an analysis*" on specific topics. *Id.* (emphasis added).

1  legal advice.  Cal. Evid. Code § 952.  As to the facts developed during discovery,

2  the statute requires the insured's attorney to cooperate with the insurer by giving his

3  professional opinion about liability, damages, and settlement.  Richmond, *supra*, 48

4  San Diego L. Rev. at 892-93 ("Except for information relating to coverage,

5  independent counsel cannot invoke work product immunity or attorney-client

6  privilege to deny the insurer information it needs to analyze or evaluate the

7  insured's defense.").  Indeed, the insurer can sue the *Cumis* counsel who

8  negligently breaches his statutory duties.  *Assurance*, 32 Cal. App. 4th 78, 88-90, 92

9  (1995).  The very nature of the Settlement Evaluation Memorandum is a privileged

10 communication; nonetheless, the statute compels *Cumis* counsel to provide the

11 evaluation as part of his duty to inform and consult on "all matters relating to the

12 action."[7]

13     In sum, the Court agrees with FNF that it was required to share *Cumis*

14 counsel's Settlement Evaluation Memorandum with NU, even though it contained

15 the attorney's professional opinion.  FNF's disclosure was compelled by the statute,

16 and thus, was not "without coercion."  Cal. Evid. Code § 912(a).

17     3.  Limited Scope of Waiver Prevents Use of the Memo on a Separate Policy

18     The wrinkle in this case is that FNF's *Cumis* counsel gave the Settlement

19 Evaluation Memorandum to NU in connection with the E&O policy, and now NU

20 seeks to use the document to dispute coverage under the separate FIB.  This requires

21 an analysis of the last sentence of subsection (d), which provides that "[a]ny

22 information disclosed by the insured or by independent counsel is not a waiver of

23 the privilege as to any other party."  Cal. Civil Code § 2860.  NU argues that the

---

[7]In other words, the case evaluation memorandum is an exception to the general rule.  Prior cases have not addressed this narrow exception and thus tend to overstate the breadth of the rule.  *Cf. Cont'l Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 520, 525 (E.D. Cal. 2010) (stating that the statute's "disclosure and cooperation requirements do not require the disclosure of privileged material" but distinguishing between the defending carrier and "non-defending insurance company sitting on the sidelines"); *First Pac.*, 163 F.R.D. at 579-80 (stating broad rule that *Cumis* counsel's duty extends only to "unprivileged information"); *Assurance Co.*, 32 Cal. App. 4th at 89-90 (same).

corporate entity is one party, thus, it may share the privileged document within its various departments.  While this argument has surface appeal, the Court is persuaded that NU's construction undermines the purpose of the *Cumis* statute in this unique case.  Reading the statute as a whole, and in light of the public policy concerns underlying the statute, the Court concludes on these facts, that NU cannot use the confidential memorandum in this coverage dispute on the FIB policy.  14 Couch on Ins. § 202:37 (3d ed. 2013) (an insurer that comes into possession of information, by virtue of participation in underlying litigation, which could be used to deny or diminish coverage, may be "precluded from using such information to the insured's detriment"); Feng, *supra*, 19 No. 4 Prac. Litigator at 27-28.

At the hearing, FNF offered a compelling hypothetical.  *If* FNF had purchased its FIB coverage from *any other carrier*, NU could not share the privileged Settlement Evaluation Memorandum from its E&O file with that other insurance company.[8]  *First Pac.*, 163 F.R.D. at 584.  The law is clear that the insured's disclosure to its insurer does not authorize a stranger to access that privileged document.  Cal. Civil Code § 2860(d).  For all practical purposes, NU's FIB department is a stranger to the communication at issue.  The FIB policy does not obligate NU to defend FNF against third-party lawsuits, consequently, FNF had no duty to share its attorney's evaluation of the underlying action.  The FIB department was not the intended audience of *Cumis* counsel's Settlement Evaluation Memorandum.  Yet, NU seeks to disadvantage FNF on a separate FIB policy by using a confidential communication that was prepared in connection with the E&O policy.  The Court concludes that the coincidence that NU issued both insurance policies should not prevent the statute from protecting the insured, FNF.

Although this conclusion is not free from doubt, the Court's analysis is

---

[8]The facts do not require the Court to resolve whether NU could use information in the Settlement Evaluation Memorandum to deny coverage on the *E&O policy*.  Nor is the question whether NU could share information obtained in connection with the *primary* E&O policy with its separate *excess* E&O policy.

09CV140

supported by three important principles of California law.  First, the fundamental purpose of the *Cumis* statute is to protect *the insured* when its insurance carrier *disputes coverage*.  *J.C. Penney Cas. Ins. Co. v. M. K.*, 52 Cal. 3d 1009, 1018 (1991); *accord Employers Ins.*, 692 F. Supp. at 1157-58 (collecting cases).  Here, FNF's *Cumis* counsel set forth his confidential legal analysis in response to NU's proper demand for a case evaluation.  FNF cooperated in order to obtain the benefits of the E&O insurance policy it purchased.  The evaluation memorandum furthered the aligned interests of the insured and insurer to obtain a good result in the underlying lawsuit.  Richmond, *supra*, 48 San Diego L. Rev. at 893 ("Although the insurer and insured are adversarial with respect to the insurer's indemnity obligation, they are united in interest insofar as defeating the plaintiff's suit against the insured is concerned.").  When the insurer "because of its position as insurer, come[s] into possession of information which it could use to deny or diminish coverage," courts have precluded insurers "from the use of such information to the insured's detriment."  14 Couch on Ins. § 202:37 (footnote omitted); *accord* Hon. H. Walter Croskey, et al., Cal. Prac. Guide: Ins. Litig., ch. 7B-L, ¶ 7:852.7 (2013) (concluding that attorney has duty to protect insured's admission of information indicating the policy does not cover the claim) (*citing Am. Mut. Liab. Ins.*, 38 Cal. App. 3d at 592); Martinez, *Coverage Advice*, *supra*, at 75-78 (discussing problem when *Cumis* counsel discovers information that might defeat coverage and whether it would be unfair for insurer to use that information).

Second, it is a basic tenet of California law to construe a waiver of the attorney-client privilege narrowly.  "The scope of either a statutory or implied waiver is narrowly defined and the information required to be disclosed must fit strictly within the confines of the waiver."  *Transam. Title Ins. Co. v. Sup. Ct.*, 188 Cal. App. 3d 1047, 1052 (1987) (citation omitted).  The *Cumis* statute further narrows the scope of any waiver by restricting access to shared documents to those within the *Cumis* triangle  – the independent attorney, the insured, and the insurer.

Here, FNF had to disclose the legal memorandum to its E&O carrier to receive the benefits of a defense and indemnification.  But the evidence shows that FNF did not intend to share that privileged information with the FIB carrier, or any other carrier. Feng, *supra*, 19 No. 4 Prac. Litigator at 7, 27-28 (if insured waives privilege, "it will understandably be interested in insuring that the waiver does not extend beyond the *limited purpose and audience* for which the information was provided") (emphasis added); *see First Pac.*, 163 F.R.D. at 584 (insured has "broad power" to decide which privileged information to share with "one carrier without thereby waiving the insured's power to decide whether or not to share those same communications with another carrier"); *see also Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 31 (1995) (waiver must be proven by clear and convincing evidence; "doubtful cases will be decided against a waiver"; waiver depends on the intent of the waiving party) (citations omitted).  The Court thus applies any waiver of the privilege in regard to NU to extend only to the particular policy connected to the Settlement Evaluation Memorandum (*i.e.*, the E&O policy).

Third, public policy considerations favor preservation of the attorney-client privilege. *Mitchell v. Super. Ct.*, 37 Cal. 3d 591, 609-10 (1984).  One such public policy concern is that the exercise of the privilege may result in the suppression of relevant evidence.  The Court concludes that the Settlement Evaluation Memorandum is barely relevant to the litigation.  NU contends that the memorandum contains "admissions" about FNF's knowledge and discovery of dishonest conduct by its employees.  The Court rejects this characterization because *Cumis* counsel simply recited underlying facts developed in the victims' cases.  The *facts* in the Settlement Evaluation Memorandum are not privileged.  NU has direct access to the underlying facts from the source – the percipient witnesses. Depositions were taken of several Chicago Title employees, many victims, Medhi, and Kaplan as well as Norton, the perpetrator of the Ponzi scheme.  To the extent that NU seeks to introduce evidence of the inferences that *Cumis* counsel drew from

the facts, NU would be using *Cumis* counsel as an expert witness.  The Court would not permit this because *Cumis* counsel did not give an opinion of whether the facts supported coverage under the terms of the E&O or FIB policies.  *Cumis* counsel's analysis of potential tort liability is simply one interpretation of known facts.  The jury in this case will have the responsibility of deciding whether the facts establish a breach of contract, or as NU asserts, that FNF discovered the dishonest conduct before the FIB policy went into effect.

The counterbalancing public policy consideration "is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding legal matters." *Id.* at 599.  The Court's decision protects FNF's relationship with *Cumis* counsel as well as NU's right to *Cumis* counsel's cooperation.  As an insurer with a duty to defend, NU looks to *Cumis* counsel to provide a full and forthright assessment of whether to settle an underlying lawsuit.  Richmond, *supra*, 48 San Diego L. Rev. at 890 ("the insurer's exercise of its own rights, as well as its fulfillment of its duties to its insured, all depend on the insurer's receiving 'full and timely information' from independent counsel").  "Almost all insurance policies contain language requiring the insured to cooperate and assist the insurer in defending and settling any claim that arises under the policy." Thomas, *supra*, Cal. Civ. Prac. Torts § 36.9.  If NU were to defeat the privilege afforded case evaluations, other insurance companies might be harmed in future cases if *Cumis* counsel tried to honor his ethical duty to the insured by withholding his candid analysis of the underlying litigation. *Mitchell*, 37 Cal. 3d at 610 (considering the public policy ramifications of disclosure in other cases).

From the insured's perspective, upholding the privilege serves the purpose of ensuring that *Cumis* counsel respects its ethical obligations toward the insured, even when he learns information that pertains to coverage issues. *Assurance*, 32 Cal. App. 4th at 87 ("it is almost unavoidable that, in the course of investigating and

1  preparing the insured's defense to the third party's action, the insured's attorney

2  will come across information relevant to a coverage or similar issue").

3       Thus, even if FNF waived the attorney-client privilege in relation to NU's

4  E&O department, the Court holds that NU cannot use the Settlement Evaluation

5  Memorandum against FNF in this FIB lawsuit.

6  D.  Sword and Shield Doctrine

7       The Court further concludes that the Magistrate Judge erred in the alternative

8  holding that FNF waived the privilege by placing the entire contents of the E&O

9  file "in issue" in this FIB lawsuit.  This Court has the advantage of having read the

10 cross-motions for summary judgment, and is thus in a better position to evaluate the

11 parties' positions and defenses.

12      "The *in issue* doctrine creates an implied waiver of the privilege *only* when

13 the client tenders an issue involving the substance or content of a protected

14 communication, *not* where the privileged communication simply represents one of

15 several forms of indirect evidence in a particular case.  For this reason, the doctrine

16 has no application in a coverage action between an insured and its carrier where the

17 issues turn on the underlying *facts* and the insured is not relying on the advice of

18 counsel for any purpose."  *Rockwell Int'l*, 26 Cal. App. 4th at 1268 (citing *Mitchell*,

19 37 Cal. 3d at 606); *accord Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1156 (9th

20 Cir. 1992).

21      When FNF deposed the senior executives, it used transmittal letters between

22 the outside coverage counsel from NU's E&O claims file.  *E.g.*, Exs. 26, 29, 30 to

23 Watnick Opp. Decl.  Nonetheless, there is no evidence that FNF ever used any part

24 of the Settlement Evaluation Memorandum to support its case.  FNF has not relied

25 on the substance of *Cumis* counsel's advice and has not otherwise revealed the

26 substance of his analysis.  *Rockwell Int'l*, 26 Cal. App. 4th at 1268 (only when

27 insured tenders an issue involving substance or contents of a protected

28 communication); *Transam. Title*, 188 Cal. App. 3d at 1053 (same).  Nor did FNF

1  question the senior executives (Tatulli or Smith) about the contents of the

2  confidential memorandum during their depositions.

3       Instead, FNF simply stated that NU's E&O claims department and its FIB

4  claims department had the "same" information about the victims' lawsuits.  It is

5  clear to the Court that FNF is referring to the underlying facts, which FNF shared

6  with every carrier in the "tower of insurance."  Each carrier had the same

7  information from the victims' complaints (including allegations that Chicago Title's

8  honest employees had negligently failed to prevent the fraudulent acts of its

9  dishonest employees) and the extensive testimony of the percipient witnesses

10  (including seven volumes of Norton's deposition in which he implicates two

11  dishonest employees).

12       As stated above, the Settlement Evaluation Memorandum does not contain

13  admissions by FNF.  The only "new" information in *Cumis* counsel's case

14  evaluation memorandum is his legal analysis.  One attorney's interpretation of the

15  evidence is not helpful to either party in this litigation.  NU had access to the facts –

16  it did not need *Cumis* counsel's case assessment to decide whether or not its

17  insurance policies covered or excluded FNF's losses.  For example, the victims'

18  complaints alleged that three of Chicago Title's employees knowingly participated

19  in Norton's fraud; Nieto's supervisors testified they had concerns about her honesty;

20  and Nancy Richmond described her investigation of the Medhi and Kaplan

21  transactions.  Those issues were fully explored in the lengthy depositions the

22  witnesses gave in the underlying action.

23       The Court holds that the in issue doctrine does not apply in this case.

24  E.  Federal Rule of Evidence 403

25       Separate and apart from the application of the attorney-client privilege, the

26  above discussion persuades the Court to exclude the Settlement Evaluation

27  Memorandum pursuant to Federal Rule of Evidence 403.

28       The relevance is highly questionable.  It contains imprecise hearsay

statements that are not attributed to any particular witness.  By contrast, numerous witnesses (including Chicago Title employees) are available to testify to facts within their personal knowledge.  Their direct testimony provides the best evidence of the issues in this case, for instance, when FNF discovered the loss within the meaning of the FIB.

The memorandum contains an attorney's opinion of potential liability in the underlying negligence and breach of fiduciary action based on inferences he drew from known facts.  By contrast, the jury will be charged with the duty to determine the breach of contract and bad faith claims based on its own reasonable inferences and credibility assessments.  The trier of fact should not be unduly swayed by one legal opinion.

In short, any minor relevance is substantially outweighed by the potential confusion and waste of time.  Fed. R. Evid. 403; *United States v. Abel*, 469 U.S. 45, 54 (1984).

F.  FNF's Request to Seal the Magistrate Judge's Order

FNF complains that the Magistrate Judge quoted the substance of the confidential Settlement Evaluation Memorandum.  FNF argues that the unnecessary revelation of privileged information violates the protective order.

In an abundance of caution, the Court orders the Clerk to seal the September 25, 2012 Order Denying Motion for Sanctions and to remove it from the public docket.  [Doc. No. 395]

The Court notes that the Westlaw and Lexis databases include the Magistrate Judge's unpublished order.  The Court will contact the publishers and request its removal.  If the parties are aware of any other publications, they may serve a copy of this Order on the publisher and request the removal of the sealed document.

Conclusion

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the Court

1   hereby overrules in part and sustains in part Plaintiffs' objections to the Magistrate

2   Judge's September 25, 2012 Order.  The Court instructs the Clerk to remove the

3   image of Docket Number 395 from the CM/ECF System, and to file that document

4   under seal.

5       **IT IS SO ORDERED**.

6   DATED:  April 8, 2014

7

8                               HON. GONZALO P. CURIEL
                                United States District Judge