UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| FIDELITY NATIONAL FINANCIAL, INC., CHICAGO TITLE INSURANCE CO., and CHICAGO TITLE CO.,<br><br>Plaintiffs,<br>vs.<br><br>NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURG, PA,<br><br>Defendant. | CASE NO. 09-CV-140-GPC-KSC<br><br>ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF PARTIAL SUMMARY JUDGMENT ORDER<br><br>[Doc. No. 430.] |
|---|---|

    Defendant National Union Fire Insurance Co. ("NU") asks the Court to reconsider the decision granting partial summary judgment of liability on the breach of contract and tort claims brought by Plaintiffs Fidelity National Financial, Inc., Chicago Title Insurance Co., and Chicago Title Co. (hereinafter collectively "FNF"). The Court heard argument on February 6, 2015. The Court denies the motion for reconsideration because NU renews arguments considered and rejected by this Court and advances new legal theories that were known when the original summary judgment motion was briefed. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003).

    Although a district court has discretion to reconsider an interlocutory decision, the efficient operation of the judicial system requires the avoidance of re-

arguing questions that have already been decided. *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation and citation omitted). A district court need not "address an issue raised for the first time in a motion for reconsideration." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

NU contends that reconsideration is appropriate in three instances where the Court committed clear error. Clear error occurs when "the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

A. <u>Direct Loss</u>

NU first requests "clarification of certain language in the Court's Order regarding whether the underlying settlement between [FNF] and third parties may constitute 'direct loss' under the Bond." Brief at 2. The Court stated that FNF's "loss may be properly measured by the amount of the settlement payment in the underlying action." Order at 24. NU argues the Court was "unclear as to how the underlying third party settlements can constitute 'direct loss' – when 'direct loss' as construed by the Court (at p. 13) refers to the amount or value of property lost by FNF while held in escrow," whereas "the settlements might bear no relation to the value of the claimant's property held by FNF in escrow.'" Brief at 3. "Here, the only 'direct loss' incurred by FNF would be the value of the Property owned by the eight claimants at issue, to the extent such Property was held by FNF in escrow and subsequently taken out of the escrows by Norton. The 'direct loss' is **not** the full amount of the settlements reached by FNF with those underlying claimants, which settlements included amounts for consequential losses (e.g. damage to credit), and treble damages permissible under elder abuse statutes." Brief at 4.

NU's request does not meet the standard for reconsideration. *Kona Enters.*,

229 F.3d at 890. Having lost the original motion, NU attempts to shift its argument. In the original motion, NU argued that the insurance claim was not covered because FNF, the Insured, had not itself suffered a "*direct* loss" (as opposed to an indirect loss by third parties who then sued the insured). The original argument emphasized "who" owned the loss; the new argument focuses on the measurement of the loss. NU now argues that "direct *loss*" means that FNF can only recover the sums actually taken from the escrow transactions. For example, NU interjects a new theory of how to characterize the settlement payments. Brief at 4.

The short response to NU's objection is that the Court did not determine the *amount* of loss because FNF's partial summary judgment motion concerned only liability. FNF will prove the amount of damages caused by NU's breach of contract at trial. FNF has now elected to measure its damages by certain amounts held in escrow.

Nonetheless, the Court relied on FNF's contractual right to measure its loss by the amounts paid to the third-party victims of Norton's forgeries, Order at 17-19, as one factor showing that NU acted in bad faith when it processed the claim without considering the Forgery Insuring Agreement. Order at 74-75, 80-82. Initially, FNF submitted Proof of Loss forms that measured its loss by the amounts paid to settle the underlying lawsuits. For example, FNF settled the Jr. Holdaway claim for $19,985,000, which would have exhausted the $15 million policy limit. Order at 26-27 n.15. The Court concluded that FNF held the victims' "Property" in a bailee or trustee capacity during the escrow transactions and that FNF had proven the Norton loss met the conditions of the Forgery Insuring Agreement. Order at 12-30. Because FNF identified an insurable interest, the Court applied the language that coverage "shall be deemed to include amounts which the Insured is legally liable to pay a third party as direct result of loss otherwise meeting the conditions and limitations of this bond." Policy at 45 (Rider 23).

NU does not cite any legal authority showing that the Court incorrectly

interpreted the language of this particular policy as applied to the bailee/trustee situation. The Ninth Circuit case of *Winters v. State Farm Fire & Cas. Co.*, 73 F.3d 224 (9th Cir. 1995), *cited in Mass. Mut. Life Ins. Co. v. Certain Underwriters at Lloyd's of London*, 2010 WL 292552, at *19-20 n.18 (Del. Ch. July 23, 2010), involved an insurance policy that specifically limited the amount to the value of the bailed property and an insured who sought a speculative, unproven amount. *Winters* is also distinguishable because the parties actually litigated the question of contract interpretation at the proper time in the district court proceedings. Here, NU is raising new legal theories after it lost its original motion. *389 Orange St.*, 179 F.3d at 665.

### B. Exclusion (g)

For the first time in this lengthy dispute, NU raises Exclusion (g). Exclusion (g) states that the policy does not cover "loss caused by an Employee (except when covered under Insuring Agreement (A) or when covered under Insuring Agreement (B) or (C) and resulting directly from misplacement, mysterious unexplainable disappearance or destruction of or damage to Property)." Policy page 10. The exception to the exclusion for Insuring Agreement (A) means that a forgery loss caused by an employee must be analyzed under the requirements of the Employee Dishonesty provision.

This new theory is not a basis for seeking reconsideration. *389 Orange St.*, 179 F.3d at 665. The claims adjustor never mentioned Exclusion (g). NU did not list this provision as an affirmative defense in its Answer. *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877-78 (9th Cir. 1995) (court properly considered an issue in a summary judgment motion that had not been listed as affirmative defense in answer). In an interrogatory concerning its coverage position, NU never raised Exclusion (g). Opp. Br. at 5 & n.9 (citations omitted). NU did not mention the provision in the detailed summary judgment briefs. *Contra Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am.*, 679 F.2d 803, 804 (9th Cir. 1982) (court revisited issue

that both sides had briefed in original summary judgment motion).

NU states it did not expect the Court to separate the Employee Dishonesty provision from the Forgery Provision.  In light of "this Court's ruling splitting the 'discovery analysis to find an issue of fact under Insuring Agreement A (Employee Dishonesty), but no factual issue under Insuring Agreement D (Forgery), . . . Exclusion (g) has become not only pertinent but crucial." Reply Br. at 2.

The Court is not persuaded by this excuse.[1]  A party's failure to present its strongest case in the first instance does not entitle it to seek reconsideration to raise legal theories or present supporting facts that were previously available. *All West Pet Supply Co. v. Hill's Pet Prods. Div.*, 847 F. Supp. 858, 860 (D. Kan. 1994) (collecting cases).

FNF would be prejudiced if the Court were to allow NU to re-shape its strategy at this late date.  The parties have already engaged in extensive discovery – none of which explored Exclusion (g).  Discovery closed in mid-2011.  *See* Doc. Nos. 187, 283.  NU's new theory would require revised expert reports to address the issue of causation.  *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (denying late motion to amend to raise new theory that would substantially increase litigation costs); *United States v. Truckee-Carson Irrigation Dist.*, 107 F.R.D. 377, 381-82 (D. Nev. 1985) (same, when prejudice to change nature of the case would require additional discovery) (citations omitted).

---

[1] NU describes the Court's Discovery holding as "unprecedented, and unexpected." Brief at 6. NU argues the decision means "there could be two dates of discovery of loss arising from Norton's fraud, one based on the employee dishonesty clause and one based on the forgery clause." *Id.* at 6, n.2. "This conclusion runs contrary to case law and public policy." *Id.* "Once something is discovered, it cannot be discovered again." *Id.* (citation omitted).
NU misreads the Order when it complains the Court split discovery into two time frames. The Court held that, under the terms of this policy, Kaplan's title search claim and Medhi's $25,000 credit were not the types of loss that triggered the Discovery provision. Order at 30-51. The record showed that the Legal department did not have any information pertaining to forged signatures during those events in 2004.
In any event, NU itself cites *FDIC v. St. Paul Cos.*, 634 F. Supp. 2d 1213 (D. Colo. 2008) (applying Colorado law but citing the Ninth Circuit's *GulfUSA Corp.* decision for discovery standard), which involves different dates of discovery of dishonesty by persons inside and outside the Insured's company.

1     NU hired a new attorney to file this motion in a six-year old case that has a firm Pretrial Conference hearing set for August 21, 2015.  *See* Doc. Nos. 1, 429, 435.  Hiring a new attorney who identifies a different way of analyzing the known facts does not justify raising a new legal theory late in the litigation.  *See Royal Ins. Co. of Am. v. Southwest Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 1999) (analyzing motion to amend complaint when party knew facts from inception of the lawsuit); *accord Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1154 (5th Cir. 1981) (same, with new attorney); *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 118 (E.D.N.Y. 2011) (same, under good cause standard).

    NU suggests that the Court's summary judgment decision constitutes a manifest injustice.  It argues that "but for" Nieto's notarization of Norton's forged signatures, the escrows would not have closed.

    This argument relies on an incorrect statement of fact.  The parties presented evidence in their original summary judgment motion that Nieto, an employee, watched Norton, a non-employee, sign documents, but that Norton's associates notarized the signatures.  Order at 3-5; *e.g.*, Pls.' Opp. Ex. 31 (Ramsour grant deed notarized by Scott Greer); Pls.' Opp. Ex. 36 [ECF 363] (Euro-Canadian grant deed notarized by David Price); Def.'s Opp. Exs. 85 (Todd Johnson notarized) & 145 (Jr. Holdaway grant deed notarized by David Price).  Accordingly, the Court found that honest employees could rely on the face of the documents as being properly notarized.  Order at 13-14, 28-29.  It was only after the Ponzi scheme collapsed that Norton confirmed the victims' allegations that Nieto had been a willing participant.  *E.g.*, Order at 3 n.3, 7 n.8, 13-14, 31 n.17, 39-40.

    At the hearing, counsel for FNF assured the Court that his firm reviewed all of the escrow documents at issue and that Nieto was not the notary.

    Even if NU had recently located documents in its case file where Nieto notarized a signature forged by Norton, it is far too late to present pre-existing evidence.  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d

873, 880-81 (9th Cir. 2009) (a motion for reconsideration cannot be used to present evidence for the first time that reasonably could have been raised earlier in the litigation), *abrogated on other grounds as recognized in Leatherman Tool Grp., Inc. v. Coast Cutlery Co.*, 823 F. Supp. 2d 1150, 1157 (D. Or. 2011); *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence'") (collecting cases).

NU contends its new substantive defense has merit; however, "[j]ustice is not served by permitting a litigant to drop the ball in his lawsuit and seek to have resurrected – at the expense of the other parties and that tax-paying public." *389 Orange*, 179 F.3d at 665.

Finally, the Court agrees with FNF that allowing NU to raise Exclusion (g) would not necessarily alter the outcome of the summary judgment ruling. Exclusion (g) uses the word "causes." In the original motion, NU's argument was based on the broader concept of "involvement" of employees, which would apply if the contract had used terms such as, "in connection with," "arising out of," or "indirectly causes." *See* Order at 56-57. In its motion for reconsideration, NU misstates the causation standard as follows: "Nieto's conduct in closing all 300 escrows for Norton's Ponzi scheme was a 'but for' cause of the loss." Reply Br. at 3, 6. The California Supreme Court rejected the "but for" standard of causation for first-party insurance policies. *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 401-04 (1989) (citing *Sabella v. Wisler*, 59 Cal. 2d 21 (1963)).[2]

---

[2] Assuming that the concurrent causation doctrine does not apply, the Court agrees with the observation that FNF made at the hearing that Norton's conduct in forging his clients' signatures was the predominate cause of the loss covered by the Forgery Insuring Agreement and that the employee's conduct is not necessarily a distinct, independent action. *Roberts v. Assurance Co. of Am.*, 163 Cal. App. 4th 1398, 1408-10 (2008) (concealment is not a separate cause of loss); *Penn-America Ins. Co. v. Mike's Tailoring*, 125 Cal. App. 4th 884, 891 (2005) (efficient proximate cause theory is inapplicable unless there are two separate or distinct perils, each of which could have caused loss independently); *Finn v. Cont'l Ins. Co.*, 218 Cal. App. 3d 69 (1990) (same); *see* Order at 13, 28-30 (rejecting NU's argument that this insurance

### C. Bad Faith Cause of Action

NU asks the Court to reconsider the decision to find it liable for bad faith conduct. It argues that no court has ever entered summary judgment on the tort claim against a first-party insurance company. NU contends that even if it failed to investigate coverage under the Forgery Insuring Agreement, that is only one factor. NU argues that it had a good faith reason to dispute coverage under Employee Dishonesty, thus, it did not have to investigate the factual basis of the Forgery Insuring Agreement, which was barred by Exclusion (g). *Brinderson-Newberg Jt. Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 282 (9th Cir. 1992); *Flintkote Co. v. Gen. Accident Assurance Co. of Canada*, 2009 WL 3497487, *6-7 (N.D. Cal. 2009).

A motion for reconsideration cannot be used "to ask the Court to rethink what the Court has already thought" through merely because a party disagrees with the decision. *Collins v. D.R. Horton, Inc.*, 252 F. Supp. 2d 936, 938 (D. Ariz. 2003) (citation omitted).

In any event, the Court relied on the totality of circumstances unique to this case as applied to the language of the particular policy. Order at 57-85. The Court held that NU had failed to show a genuine issue of material fact that its consideration of the claim was reasonable and in good faith. Fed. R. Civ. P. 56(c). Significantly, the record showed that NU completely ignored the Forgery Insuring Agreement as a possible basis supporting FNF's claim. *Frommoethelydo v. Fire Ins. Exch.*, 42 Cal. 3d 208, 215 (1986). A legitimate dispute "exists only where the insurer's position is maintained in good faith *and* on reasonable grounds." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723-24 & n.7 (2007) (citations and footnote omitted) (emphasis added). The record showed NU had the necessary facts but never considered whether it was liable for the claim as forgery by a non-

---

policy imposed an additional requirement of "good faith" reliance for Forgery coverage); *First Nat'l Bank of Manitowoc v. Cincinnati Ins. Co.*, 485 F.3d 971, 980-81 (7th Cir. 2007) (rejecting an interpretation that would eliminate coverage for all forgery losses in all cases where an employee processed the paperwork).

employee. Thus, the Court granted FNF's motion for partial summary judgment on the facts and arguments presented at that time. *E.g.*, *Concept Enters., Inc. v. Hartford Ins. Co. of the Midwest*, 2001 WL 34050685, *6-7 (C.D. Cal. 2001).

<u>Conclusion</u>

For the reasons stated above, the Court denies the motion for reconsideration.

**IT IS SO ORDERED**.

DATED: February 19, 2015

HON. GONZALO P. CURIEL
United States District Judge