FILED

2015 JUL 24 PM 4:32

TH

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDELITY NATIONAL FINANCIAL, INC., CHICAGO TITLE INSURANCE COMPANY, and CHICAGO TITLE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>Defendant. | CASE NO. 09cv140-GPC (KSC)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO MODIFY SCHEDULING ORDER TO SUBSTITUTE EXPERT AND RE-OPEN EXPERT DISCOVERY**<br><br>[Doc. 445] |

Before the Court is a Joint Motion initiated by defendant National Union Fire Insurance Company of Pittsburgh, PA, ("NU"), filed May 28, 2015 [Doc. 445]; plaintiff Fidelity National Financial Inc.'s ("FNF") Supplemental Opposition to the pending Joint Motion, filed June 29, 2015 [Doc. 452]; and NU's Reply to the Supplemental Opposition, filed July 2, 2015 [Doc. 454]. NU moves to substitute its previously-disclosed bad faith claims handling expert, Dean Felton, with a new expert, Joseph Monteleone, "who will testify within the same scope and substance of Mr. Felton's opinions, but pursuant to his own analysis of the case and in his own words." [Doc. 445, p. 8; Doc. 445-1, p. 2] NU explains that Mr. Felton suffered a heart attack

in early 2014 that rendered him medically unable to serve as an expert in this or any other court case. [Doc. 445, p. 10; Doc. 445-2, p. 2] FNF objects that NU fails to show good cause to substitute an expert so close to trial, as NU purportedly delayed more than nine months after learning about Mr. Felton's unavailability before raising the issue with FNF or the Court. [Doc. 445, p. 22] NU counters that it would have been "premature" to broach the subject while motions for summary judgment (and NU's motion for reconsideration) were pending before the District Court, and that it acted diligently as soon as it became clear that the expert testimony would still be necessary at trial. *Id.* at 8-9.

The Court has reviewed and considered the parties' arguments and the applicable law. Finding that NU has failed to show good cause for its delay in raising the request, and that substituting experts at this time would unduly prejudice FNF, the Court DENIES NU's request.

**A. Background**

The operative Scheduling Order in this case provided that expert reports should be exchanged no later than July 15, 2011; that rebuttal reports be exchanged no later than August 5, 2011; and that all expert discovery conclude by September 9, 2011. [Doc. 234, pp. 1-2] The parties simultaneously exchanged initial expert reports on July 15, 2011, and rebuttal reports on January 27, 2012. [Doc. 445-3, p. 2] Mr. Felton's initial report, which is attached as Exhibit 3 to FNF's counsel's declaration, was 55 pages long and contained 10 numbered opinions. [Doc. 445-4] His rebuttal report, which is attached as Exhibit 4 to FNF's counsel's declaration, was 50 pages long and contained 12 numbered opinions. [Doc. 445-5]

FNF deposed Mr. Felton regarding his expert opinions and reports on February 15, 2012. [Doc. 445-3, p. 2] The deposition lasted six hours and resulted in a 240-page transcript. *Id.* Today, counsel for FNF reports that "[r]eviewing and analyzing Mr. Felton's reports, working with [plaintiffs' experts] on rebutting Mr. Felton's initial report, and preparing for and deposing Mr. Felton – tasks that essentially consumed key

members of Plaintiffs' trial team nearly full time for several months – required hundreds of billable hours, and hundreds of thousands of dollars in attorney and expert fees." *Id.*

Unbeknownst to the parties at that time, and according to a Declaration from Mr. Felton submitted by NU in support of the Joint Motion, Mr. Felton suffered a disabling heart attack in "early 2014" and was subsequently instructed by his physician to discontinue his practice and withdraw from all professional activities. [Doc. 445-2, p. 2] Over the next year, Mr. Felton dissolved his consulting company and withdrew as an expert in all matters in which he was involved, including the instant matter. *Id.* However, he did not inform NU's counsel of his medical availability until approximately May 16, 2014. [Doc. 445, p. 10] By that time, the District Court had already ruled on *Daubert* motions and the parties' cross motions for summary judgment were pending.

On March 28, 2014, Judge Curiel issued an Order ruling on *Daubert* motions and addressed the admissibility, *inter alia*, of Mr. Felton's expert testimony at trial. [Doc. 420] Judge Curiel's Order limited Mr. Felton's proffered testimony in several ways, including ruling that he could not testify about evidence excluded by the Magistrate Judge, *id.* at 2-4; that he could not provide opinions that contradicted California law or were based on pure speculation, *id.* at 5-6; and that he was not qualified to render an expert opinion on two of the topic areas proposed by NU (escrow transactions, banking laws, and fraud; and application of the policy's "Other Insurance or Indemnity" provision), *id.* at 7.

On September 30, 2014, Judge Curiel issued an 85-page Order granting FNF's Motion for Partial Summary Judgment of liability on FNF's contract and tort claims, and denying NU's Motion for Summary Judgment. [Doc. 427] Both parties' summary judgment briefing relied upon Mr. Felton's deposition testimony, as did Judge Curiel's September 30, 2014 Order on the Motions. *See* [Doc. 324-1, p. 13; Doc. 327-8, Ex. 21, p. 83; Doc. 343, p. 19; Doc. 343-20, Ex. 162, p. 71; Doc. 349, p. 15; Doc. 427, pp. 66,

78] On October 28, 2014, NU filed a Motion for Reconsideration of the Order [Doc. 430], which was denied on February 19, 2015. [Doc. 439]

NU first notified FNF of Mr. Felton's unavailability in a telephonic meet-and-confer conference on March 31, 2015, which had been initiated by FNF's counsel. [Doc. 445-1, p. 2; Doc. 445-3, p. 3] In that telephonic conference, counsel for NU initially stated that Mr. Felton had died, and requested that the parties stipulate to substituting a new expert. [Doc. 445-3, p. 3] FNF sent NU's counsel an email on April 7, 2015, asking for information confirming Mr. Felton's death. [Doc. 445-6, Ex. 6, p. 7] NU's counsel responded that same day via email that she had been mistaken in stating that Mr. Felton was dead, but rather that he was medically unavailable due to a heart attack. *Id.* at 6. In a subsequent phone call on April 13, 2015, FNF offered to stipulate to a substitute expert if NU would agree to limit the substitute expert to Mr. Felton's remaining opinions and testimony. [Doc. 445-3, p. 4] NU declined to so stipulate, *id.*, and the instant Joint Motion followed on May 28, 2015. [Doc. 445]

In the Joint Motion, NU argues that it should be permitted to substitute a new expert in light of Mr. Felton's unforeseen medical incapacitation because "the denial of NU's right to present expert testimony at trial would irreparably prejudice NU by permitting FNF to proffer unrebutted expert witness testimony on several critical issues." *Id.* at 9. While not disputing that NU may be disadvantaged if precluded from introducing any bad faith claims handling expert testimony at trial, FNF opposes NU's request on the grounds that NU inexcusably and prejudicially waited until the eve of the pretrial conference to alert opposing counsel and the Court to Mr. Felton's unavailability. *Id.* at 27-28. NU asserts that it would have been "premature" to raise the issue of a substitute expert while the cross-motions for summary judgment (and the subsequent motion for reconsideration) were pending, and that it apprised FNF of Mr. Felton's unavailability as soon as its Motion for Reconsideration was denied on February 19, 2015, and it became evident that bad faith claims handling experts would still be relevant at trial. *Id.* at 8-9. FNF counters that these experts' relevance was

certain on September 30, 2014, when the Court issued its Summary Judgment Order, and that NU's motion for reconsideration would not have altered that relevance regardless of whether it was granted or denied. *Id.* at 36.

On June 29, 2015, FNF filed supplemental briefing in opposition to NU's request to substitute its expert witness. FNF alleged that in a separate case in the District of Colorado, on May 28, 2015, NU represented to the presiding judge that the same Mr. Felton would be available to testify as an expert witness in a trial beginning June 8, 2015. [Doc. 452, p. 2] NU denied these allegations in a Reply dated July 2, 2015, claiming in a supporting Declaration of counsel that NU only represented that previously recorded testimony from Mr. Felton's deposition might be introduced at trial and that he remains medically unavailable to testify in all matters. [Doc. 454-1, p. 2] This Court declines to resolve this factual disagreement, as the parties have not provided the Court with sufficient information with which to do so, and because the disagreement is only tangentially relevant to the Joint Motion now before the Court. Further, FNF's Supplemental Opposition will not be considered in ruling on the Joint Motion.

**B. Legal Standards**

There is little published law in the Ninth Circuit dictating which legal standards a District Court should use to evaluate a party's motion to substitute (or designate, disclose, or supplement) an expert witness after the deadline in the Scheduling Order has passed. At least one other court in this District has evaluated a request to substitute an expert under Rule 16(b) of the Federal Rules of Civil Procedure, which permits a Court to amend a Scheduling Order for good cause. *Park v. CAS Enterprises, Inc.*, 08cv385-DMS (NLS), 2009 WL 4057888, at *2 (S.D. Cal. Nov. 18, 2009). Other courts in this Circuit have analyzed such requests under Rule 37(c), which authorizes the exclusion of an expert that was untimely disclosed unless the moving party can

show substantial justification or harmlessness. *E.g. Nijjar v. Gen. Star Indem. Co.*, CV 12-08148 DDP (JCGx), 2014 WL 271530, at *2 (C.D. Cal. Jan. 23, 2014).

At its heart, NU's request to designate a substitute expert long after the expert designation deadline is, in fact, a request to amend the Scheduling Order. Were this Court to grant NU's request, the Court would be required to issue an Amended Scheduling Order setting new dates for the disclosure of expert and rebuttal reports, and re-open expert discovery. Furthermore, after comparing Rule 16(b) to Rule 37(c), this Court finds that the factors are largely coextensive. Whereas Rule 16(b) directs a District Court to evaluate (1) the moving party's diligence, and (2) prejudice, Rule 37(c) directs a District Court to assess (1) whether the moving party has shown "substantial justification," and (2) harm. *Compare Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (interpreting Rule 16(b)) *with* FED. R. CIV. P. 37(c). For these reasons, this Court will join its sister court in this District and treat NU's request as a Motion to Amend the Scheduling Order under Rule 16(b). *See Park*, 2009 WL 4057888, at *2.

Rule 16(b) states that "good cause" is required to amend a Scheduling Order. FED. R. CIV. P. 16(b)(4). As explained by the Ninth Circuit:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." FED. R. CIV. P. 16 advisory committee's notes (1983 amendment).... Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking the modification. If that party was not diligent, the inquiry should end.

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (citations omitted); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

**C. Analysis**[1]

As noted in Section B, *supra*, the primary consideration for this Court under *Johnson* and Rule 16(b) is whether NU has shown diligence in seeking to amend the Scheduling Order to notice a new expert witness at this stage in the case. Under the circumstances, this Court finds that NU has failed to demonstrate the diligence necessary to support a finding of good cause to amend the Scheduling Order.

### *1. Diligence*

This case was filed in 2008, transferred to this District in 2009, and discovery closed in 2011. [Docs. 1, 70, 234] The parties spent literally years exchanging discovery, deposing witnesses, and litigating dispositive motions on the understanding that Mr. Felton would be NU's bad faith claims handling expert at trial. When Mr. Felton informed NU's counsel on May 16, 2014, that he had to withdraw from the case, a red flag should have been raised for both NU and its counsel. Diligent counsel would have recognized that substituting a new expert and reopening discovery nearly three years after the discovery deadline would be a major setback to the parties' trial preparations and the Court's pretrial case management. In order to mitigate this impact, NU's counsel should have notified FNF and the Court *immediately* upon learning of Mr. Felton's withdrawal.

Today, NU argues that it did not wish to incur the expense of retaining a substitute expert until after the District Court ruled upon the cross motions for

---

[1] The Court has read and considered the extensive arguments in the briefs. To the extent that the Court does not specifically address a party's particular argument, note that the Court has considered and rejected it.

summary judgment and NU's Motion for Reconsideration and it was certain that Mr. Felton's expert testimony would be necessary at trial. [Doc. 445, p. 9] However, NU should have at least alerted FNF and the Court to the possibility that it would need to substitute Mr. Felton after the resolution of dispositive motions. This would have given the District Court the option of staying the pending Motions for Summary Judgment – which relied on Mr. Felton's deposition testimony, *see, e.g.,* [Doc. 324-1, p. 13; Doc. 343, p. 19] – to grant NU leave to retain a substitute expert. However, NU made the tactical decision to withhold this information to first see whether it would receive a favorable ruling on its Motion for Summary Judgment (which it did not). NU then continued to withhold the information to see if it would succeed on a Motion for Reconsideration (which it did not). The Court notes that NU's Motion for Reconsideration was filed on October 28, 2014, a full *five months* after Mr. Felton withdrew from the case. [Doc. 430]

In the instant Joint Motion, NU argues that it will be "unjustly and irreparably prejudiced" if unable to present live expert testimony to explain the handling of the instant claim under its fidelity bond. [Doc. 445, p. 19] This is a risk that NU should have considered before the District Court digested thousands of pages of briefing and prepared 95 pages of written Orders on summary judgment and reconsideration. *See* [Docs. 427, 439] Further, this Court rejects NU's assertion that it will be prejudiced if it proceeds to trial without being able to proffer live testimony from Mr. Felton, as it is free to rely on and submit his deposition testimony given his unavailability to testify personally. *See* FED. R. CIV. P. 32(a)(4).

NU also argues today that it does not seek a better expert, but simply an equal substitute for Mr. Felton who "will fairly restore NU to its [prior] position." [Doc. 445,

p. 8] The Court finds that this statement is belied by the fact that in the parties' meet and confer conferences in March and April of 2014, NU rejected FNF's offer to stipulate to a substitute expert whose testimony would be limited to Mr. Felton's remaining opinion and conclusions. [Doc. 445-3, p. 4] NU's rejection of this proposed stipulation – a reasonable compromise – suggests that NU may in fact be hoping to strengthen its trial position with a new and better expert, perhaps one whose opinion is shaped by knowledge of the parties' arguments and Court rulings to date, and who is not subject to the limitations imposed upon Mr. Felton and NU by Judge Curiel's prior Orders. *See Park*, 2009 WL 4057888, at *2 (permitting the plaintiff to substitute a new damages expert, but requiring the new expert to "adopt the initial and rebuttal expert reports in their entirety").

Had NU timely notified FNF and the Court of Mr. Felton's withdrawal in May 2014, this Court likely would have granted a promptly filed Motion to Amend the Scheduling Order. *Cf. Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 19 (D.P.R. 2009) (even though the defense waited six months after their expert's death to move for substitution, good cause existed because they had notified opposing counsel of their expert's illness more than a year earlier). However, this Court will not reward NU's dilatory conduct and allow it to gain a tactical advantage by designating (in the words of FNF) "not a true substitute for Mr. Felton, but a better one." [Doc. 445, p. 31]

NU had numerous opportunities to advise the Court and opposing counsel of Mr. Felton's withdrawal in the nine months between May 16, 2014 – when NU first learned of Mr. Felton's incapacitation – and March 31, 2015 – when NU first raised the issue with FNF. Most significantly, the parties appeared before the undersigned Magistrate Judge for a Mandatory Settlement Conference ("MSC") on December 2, 2014. [Doc.

433] At the conclusion of the MSC, this Court discussed scheduling with the parties, and subsequently issued a Scheduling Order regulating pre-trial proceedings for the duration of the case. [Doc. 435] Even failing to raise the issue during pretrial motions, a diligent party would certainly have raised the issue during this case management conference with the undersigned Magistrate Judge.[2] NU failed to do so, and instead waited nearly three more months to bring this issue to FNF's attention – at a pretrial meet-and-confer conference that was initiated by FNF. See [Doc. 445-3, p. 3]

NU argues that its delay was justified because it would have been premature to address expert substitution before motions for summary judgment were decided. [Doc. 445, p. 9] However, NU has not cited to any controlling legal authority to support its argument that the procedural posture of the case justified the nine-month delay in notifying FNF. The two cases cited by NU on this point are district court opinions from outside the Ninth Circuit, and both involve substantially different facts from the instant case. Accordingly, these cases are neither binding nor particularly persuasive.

In the first case, *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17 (D.P.R. 2009), the District Court of Puerto Rico permitted the defendant to substitute a new expert six months after the expert's death while the case was stayed pending appeal. *Id.* at 21. However, the defendant had notified the plaintiff of its expert's illness – and the possibility that it would need to seek a substitute – 10 months before the expert's death, and 14 months before filing the formal motion to substitute. *Id.* at 19. The *Morel*

---

[2] If NU were concerned that disclosing Mr. Felton's unavailability to FNF at the MSC would somehow compromise its negotiation position, it could have alerted the undersigned Magistrate Judge outside the presence of opposing counsel as part of confidential settlement discussions and in anticipation of the Court issuing its amended Scheduling Order.

Court concluded that "Plaintiffs will not be prejudiced because they had notice of the possibility of substitution.... Defendant disclosed to plaintiffs a year ago that Dr. Warner was sick and a substitute was needed." *Id.* at 21. By contrast, in the instant case, NU gave FNF no prior notice of Mr. Felton's illness. Instead, during the nine months that NU delayed informing FNF of Mr. Felton's unavailability, the parties continued to litigate substantive motions, participate in a Mandatory Settlement Conference, and prepare for trial, and thus FNF stands to be substantially prejudiced by the delay.

In the second case cited by NU, *Abbott v. Lockheed Martin Corp.*, 06cv701-MJR-DGW, 2014 WL 6613148 (S.D. Ill. Nov. 21, 2014), the Southern District Court of Illinois permitted the defendants to substitute an expert. Though the unpublished opinion alludes to a "length of time between the passing of expert disclosure deadlines and the instant controversy" which was "largely a result of two interlocutory appeals in the case," *id.* at *2, the opinion does not provide specific details how quickly the defendants notified opposing counsel of their expert's unavailability or counsel's proffered explanation for any delay. Thus it is difficult to draw any meaningful parallels to the instant case.

### 2. *Prejudice*

Though prejudice is a lesser consideration under Rule 16(b) and *Johnson*, this Court also finds that FNF has demonstrated that it would be significantly prejudiced by NU's designation of a new expert at this late stage in the litigation. This case was filed in 2008, and all discovery has been closed since 2011. [Docs. 1, 234] The pretrial conference is scheduled for August 21, 2015. [Doc. 435] Judge Curiel has clearly stated that all remaining pretrial dates are firm. *See* [Doc. 456, pp. 2, 4]

For the past four years, the parties have been conducting discovery, preparing the case for trial, and litigating summary judgment and other motions based on the understanding that Mr. Felton would be NU's expert witness at trial. Both parties' summary judgment briefing relied upon Mr. Felton's deposition testimony, as did Judge Curiel's September 30, 2014 Order on the Motions. *See* [Doc. 324-1, p. 13; Doc. 327-8, Ex. 21, p. 83; Doc. 343, p. 19; Doc. 343-20, Ex. 162, p. 71; Doc. 349, p. 15; Doc. 427, pp. 66, 78] To reverse course at this time would be extremely time intensive and costly. Designation of a new bad faith claims handling expert would necessitate re-opening expert discovery and perhaps even fact discovery, to allow FNF to fully prepare to defend against NU's new expert's opinions. The new expert's opinions might even give rise to renewed motions for summary judgment.[3]

The Court accepts FNF's counsel's representations that the analysis of expert witness opinions subsumed several months of full-time preparation and hundreds of billable hours and thousands of dollars of attorney and expert fees. [Doc. 445-3, p. 2] To require FNF to expend that kind of effort with a new "substitute" NU expert on the eve of the pretrial conference would be extremely prejudicial, particularly because it would require counsel to devote time to expert issues which should be spent preparing for trial.

//
//

---

[3] From the outset, given the nature of the claims at issue, this case has revolved around the opinions of the parties' experts. To permit NU to now "reset" the litigation by substituting a new expert would not only be extremely costly to the parties, but would in large part constitute a waste of the substantial judicial resources expended thus far.

### 3. Discussion

NU's request to amend the Scheduling Order at this late stage in the litigation – after *Daubert* rulings and multiple orders on summary judgment, and mere months before the pretrial conference – is unjustifiable, untimely, and prejudicial. Given NU's failure to establish good cause, this Court finds no reason to permit NU to gain a windfall advantage by substituting a "new and better expert" which would make irrelevant all the work done by FNF to date to defend against Mr. Felton's original opinions.

Separate and apart from the issue of good cause, this Court also finds that the timing of NU's request to substitute its expert is suspect in light of NU's recent substitution of counsel. The time correlation between the substitution of counsel and the instant Joint Motion casts doubt on the genuineness of the argument NU advances to support its substitution request. For the purpose of resolving the instant Joint Motion, this Court accepts NU's assertion that the only reason it delayed in seeking to substitute Mr. Felton was a concern that such a request would be "premature" in light of the pending motions for summary judgment. However, NU's present counsel has provided no declaration establishing that these facts are true, and the Court finds it equally plausible that NU's present request to substitute Mr. Felton with a new expert is borne of a new trial strategy or interest in avoiding the limitations imposed by the Court in prior rulings. Nevertheless, a client is ordinarily chargeable with his prior counsel's acts and omissions. *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002).

//
//

Based on the standards of Rule 16(b), this Court finds that NU has failed to show good cause to warrant amendment of the Scheduling Order. NU's request to designate a new expert is DENIED without prejudice.[4]

In closing, this Court notes that its ruling is limited to the instant question presented in NU's papers: whether NU has shown good cause to amend the Scheduling Order to permit designation of a new expert witness. For the reasons stated above, this Court finds that NU has not. However, this Court defers to the District Court to decide whether and to what extent NU might be permitted to introduce Mr. Felton's expert opinions at trial – for example, by way of his deposition testimony. This Court's Order is also not intended to foreclose the possibility that the District Court might permit NU to present Mr. Felton's remaining opinions and testimony through a "stand-in" live witness who is strictly limited to discussing Mr. Felton's methodology and conclusions. This compromise was originally proposed by FNF (and rejected by NU) in April 2015, and appears to mirror the solution reached by another Magistrate Judge in this District. *See Park*, 2009 WL 4057888, at *2; [Doc. 445-3, p. 4]. These are evidentiary issues that should be presented to the District Court.

//
//
//
//
//

---

[4] Because the Rule 16(b) and Rule 37(c) factors are largely co-extensive, the Court's ruling would be the same under Rule 37(c)'s "substantial justification" and "harmlessness" analysis.

## D. Conclusion

For the reasons so stated, NU's request to amend the Scheduling Order to permit the late designation of a new substitute expert witness is DENIED without prejudice. The parties shall take up any remaining evidentiary issues relating to Mr. Felton's unavailability with the District Court.

IT IS SO ORDERED.

Date: July 24, 2015

KAREN S. CRAWFORD
United States Magistrate Judge