1              UNITED STATES DISTRICT COURT

2          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4   FIDELITY NATIONAL FINANCIAL,   .
    INC., ET AL.,                  .
5                                  . Docket
               Plaintiffs,         . No. 09-cv-0140-GPC-KSC
6                                  .
               v.                  . September 25, 2015
7                                  . 1:30 p.m.
    NATIONAL UNION FIRE INSURANCE  .
8   COMPANY OF PITTSBURGH, PA,     .
    ET AL.,                        .
9                                  .
               Defendants.         . San Diego, California
10  . . . . . . . . . . . . . . . .

11      TRANSCRIPT OF HEARING RE OBJECTION TO MAGISTRATE ORDER
            BEFORE THE HONORABLE GONZALO P. CURIEL
12                UNITED STATES DISTRICT JUDGE

13

                   A-P-P-E-A-R-A-N-C-E-S
14
    For the Plaintiffs:
15                      Hahn Loeser & Parks LLP
                        200 Public Square, Suite 2800
16                      Cleveland, Ohio 44114
                        By:  STEVEN A. GOLDFARB, ESQ.
17                           RUPA G. SINGH, ESQ.

18
    For the Defendants:
19                      Sedgwick Detert Moran and Arnold
                        801 South Figueroa Street, Suite 1800
20                      Los Angeles, California 90017
                        By: MICHAEL R. DAVISSON, ESQ.
21

22  Court Reporter:     Chari L. Possell, RPR, CRR
                        USDC Clerk's Office
23                      333 West Broadway, Suite 420
                        San Diego, California 92101
24                      chari_possell@casd.uscourts.gov

25  Reported by Stenotype, Transcribed by Computer

```
1              SAN DIEGO, CALIFORNIA; SEPTEMBER 25, 2015; 1:30 P.M.

2                                   -o0o-

3              THE CLERK:  Number 16 on calendar, case 09-cv-0140,

4   Fidelity National Financial, Inc., v. National Union Fire

5   Insurance Company, for a Hearing on Objections to the

6   Magistrate Order, Docket 460.

7              THE COURT:  Appearances, please.

8              MR. DAVISSON:  Good afternoon.  Michael Davisson for

9   National Union.

10             THE COURT:  Good afternoon.

11             MR. GOLDFARB:  Good afternoon, Your Honor.  Steve

12  Goldfarb and Rupa Singh for the Plaintiffs, Fidelity and

13  Chicago Title.

14             THE COURT:  Good afternoon to you all.

15       We are here on a Hearing Regarding Objections to

16  Magistrate Order Document 460.  I have reviewed the operative

17  order, the pleadings.  And just to give you a sense of how I

18  see the case, at this point, we have a trial that's limited to

19  the issue of damages, that we are looking forward to.  With

20  respect to the issues, there are questions regarding bad faith

21  claims handling, and with respect to that issue, Dean Felton

22  was the designated expert that the defense had chosen, had

23  relied upon, and there was extensive discovery relating to his

24  work.  Unfortunately, due to no fault of National Union,

25  Mr. Felton is not available.  So at this time, the question is
```

1    whether or not the defense should be permitted to replace

2    Mr. Felton with a substitute.

3         There are a number of questions that have been presented

4    to Judge Crawford and to this Court regarding the timeliness of

5    the notice that was provided by the defense regarding the

6    unavailability of Felton, the diligence of the defendant in

7    reporting the unavailability of Mr. Felton, and the effect that

8    it would have on the case if a substitute expert were permitted

9    to enter at this time.

10        I share a number of the concerns of Judge Crawford as to

11   the timing, the lack of diligence; at the same time, I also am

12   not clear as to the level of prejudice that would be created by

13   permitting a substitution of the expert at this stage.

14        I do recognize what the Magistrate, what the Plaintiffs,

15   were concerned about, as far as some possible gamesmanship,

16   some last-second reconfiguring of the Defendant's case, and I

17   share those -- some of those concerns.  But in my view, the

18   question is can those concerns be sufficiently addressed in

19   some reasonable fashion.  And it seems to me that, as a

20   starting point, that the best means to make that determination

21   would be to review, consider, the report of the substitute

22   expert.

23        And as I understand it, such a report exists; is that

24   true?

25             MR. DAVISSON:  Of the substitute, Your Honor?

1             THE COURT:  Yes.

2             MR. DAVISSON:  It does, Your Honor.

3             THE COURT:  And as I understand it, it has existed

4    since around June?

5             MR. DAVISSON:  I don't know when it was finalized, to

6    be honest.  That sounds about right.

7             THE COURT:  And we are now three months later, in

8    September.  And as I understand it, that report has not yet

9    been furnished or provided to the plaintiffs.  Is that also

10   true?

11            MR. DAVISSON:  That's also true, Your Honor.

12            THE COURT:  So my concern is that without an

13   opportunity to review that particular report, we are just kind

14   of talking about hypotheticals, whether or not there are new

15   opinions, that they are ones that are configured to avoid the

16   Court's *Daubert* order, or ones to somehow or another improve

17   the chances of the Defendant's prevailing or reducing the

18   amount of damages.

19       So it strikes the Court that before we could really have

20   an intelligent conversation about prejudice, before we can have

21   a full record for appeal, we would want that -- if not on the

22   record, to be furnished to the Plaintiff; the Plaintiff have an

23   opportunity to review it, consider it, and then report back as

24   to how and why that report creates any additional prejudice,

25   how it creates the specter or the likelihood that we will

1    encounter the problems that are noted by Judge Crawford.  And

2    those include the possibility reopening of expert discovery,

3    even fact discovery, the possible rise to renewed motions for

4    summary judgment.  It seems to me that we are not really in a

5    position to make those determinations without that report being

6    shared.  And again, I am surprised, I am disappointed, that it

7    requires for this matter to be presented to me for this to even

8    become something to talk about.

9        So rather than go through all of this today, what I am

10   going to do is I am going to direct the defense to furnish, by

11   the close of business, a copy of this report by the substitute

12   expert, and then I am going to give the plaintiffs an

13   additional period of time to review this report and then to get

14   back to the Court as to why, in their estimation, it provides

15   further indication of prejudice or of gamesmanship.

16       Because the way I see it, if we could assure ourselves

17   that essentially the substitute expert would parrot the

18   opinions that have been provided by Mr. Felton -- and I believe

19   initially there were 13 opinions, and the *Daubert* order

20   addressed some of those opinions -- unless we have assurances

21   that we are going to be limited to those opinions, then we will

22   have a problem.  If we can limit ourselves to that, I would be

23   inclined to say let's get moving.  We are going to be set for

24   trial in January.  I think we are set for January.

25            MR. GOLDFARB:  January 11, Your Honor.

1          THE COURT:  And given the turnaround with respect to

2    the original designation of experts, the original expert

3    reports were to be exchanged July 15, 2011.  Expert discovery

4    was to be concluded September 9, less than two months later.  I

5    think we have enough time, possibly, as long as, in fact, we

6    are in a position to limit ourselves to those opinions of Dean

7    Felton.

8        So with that being the case, let me ask, would two weeks

9    be sufficient time for the Plaintiffs to fully review,

10   consider, and then respond to what is being offered by the

11   defense?

12         MR. GOLDFARB:  Your Honor, the answer in the abstract

13   as to whether two weeks is enough time, the answer is a simple

14   yes.  The answer in the context of will we also be preparing

15   motions in limine during that time period, proceeding with our

16   trial preparation, the answer is no.  That is the issue.

17         THE COURT:  And I expect that, given the number of

18   lawyers that have been identified as being involved in this,

19   that, number one, motions in limine are being prepared right

20   now as we speak; and number two, there are lawyers who probably

21   have been the ones designated to prepare certain motions in

22   limine because they have been limited.

23         MR. GOLDFARB:  No.  Half the list is not involved

24   with the case anymore, and we are down from a large number of

25   people working on trial preparation to the people that are

1    going to be involved in the trial and with the knowledge of all

2    the specific issues.  The key people that are involved, the

3    three or four people that are really focusing on the case, are

4    all working on the motions in limine, are all involved in the

5    expert.

6         But if I could potentially just address the issue you

7    raised.  I certainly appreciate it and I would just at least

8    suggest and ask that you consider whether or not you do in fact

9    have a full record to consider this.  I mean, from our

10   perspective, the reason that you don't have the report to

11   review is because the defendant didn't want to provide that

12   because it would provide the evidence of exactly what we have

13   said and what the Magistrate Judge found.

14             THE COURT:  And maybe that's true.

15             MR. GOLDFARB:  But here, the proof is already in the

16   pudding, Your Honor.  On the last page of the Magistrate

17   Judge's order, she suggested that she was not intending to

18   foreclose the possibility that the Court might permit National

19   Union to present Mr. Felton's remaining opinions and testimony

20   through a stand-in live witness who is strictly limited to

21   Mr. Felton's opinions.

22             THE COURT:  Those opinions are as revealed during

23   cross-examination of Mr. Felton?

24             MR. GOLDFARB:  But there can only be prejudice by

25   whatever the substitute does other than saying he is going to

1   adopt and -- adopt and take over Mr. Felton's opinions and his

2   report and be a stand-in, because his opinions, the 13

3   opinions -- they are what they are.  We don't need him to have

4   a report to say that.  He could simply adopt Mr. Felton's

5   report, if that's what he wanted to do.

6        We know from the meet-and-confer and what the Defendant

7   has said over the last four and a half months that that isn't

8   what they want to do.  They have made it crystal clear that

9   isn't what they want to do, that they want to change -- and I

10  am sorry to go on, Your Honor.

11          THE COURT:  And I appreciate that thought, that

12  position.  But ultimately, I have thought about this, I have

13  looked at this, and I am most comfortable with going about this

14  in the way that I have proposed.

15          MR. DAVISSON:  May I be heard, Your Honor, just

16  briefly, and make a suggestion?

17          THE COURT:  Yes.

18          MR. DAVISSON:  The suggestion is instead of close of

19  business today, that, I mean, one of the things I thought of --

20          THE COURT:  I need it by close of business.  I don't

21  want there to be --

22          MR. DAVISSON:  Let me just finish my thought.

23       As I was coming down on the train, thinking about this

24  case and thinking about what was needed in this case, on this

25  issue, it did occur to me that, at the end of the day,

1   notwithstanding all the protestations of my colleague, we

2   really don't and are not seeking an advantage.  We didn't cause

3   Mr. Felton's condition.  And so really, the stand-in notion by

4   Mr. Monteleone as opposed to this process of, "Here is his

5   report; here is all their complaints about the report," all

6   this back and forth -- which, you know, I have to be honest

7   with the Court, I share -- it's tiresome to keep going back and

8   forth on this issue.

9       I would propose if you give me one extra day, so I could

10  talk to my client, who is in New York -- and I probably can't

11  reach them today.  We have a mediation on Monday.  If you would

12  allow -- where my client will be present.  If you would allow

13  me to talk to my client about this on Monday, Your Honor, I

14  would like to either get them to agree to a stand-in, adopt the

15  report -- that solves their problem.  And/or, if my client has

16  a different view, then we will give them the report by close of

17  business on Monday.  I am just asking for one more day, Your

18  Honor.

19          THE COURT:  I will give you one more day, but that

20  will take us to Saturday.  To the extent at this point it's

21  five o'clock in New York and who knows, with the Pope being in

22  New York, if anyone went to work.  But I will give you to

23  tomorrow at 5:00 p.m., and then you can make your decision.

24  You will have sufficient time to contact your client and you

25  can discuss this.  But I want to avoid any further claims that

1  somehow or another this report was doctored, although I expect

2  that still would be a possibility.

3          MR. GOLDFARB:  And if --

4          THE COURT:  I mean a possibility that the Plaintiffs

5  would claim.

6          MR. DAVISSON:  Your Honor, I have nothing do with

7  drafting this report one way or the other.  My partner was

8  handling that.  I don't know the details of this report.  But I

9  can assure you we are not going to doctor this report, whatever

10 that means.  I can assure you that I am not going to change the

11 report.  I can assure you that I am not going to address the

12 Court in that fashion in any way, shape, or form.

13         THE COURT:  All right.

14         MR. GOLDFARB:  The issue about the notion of a

15 stand-in, just so that we are clear on this, from our

16 standpoint, that is someone that is going to adopt in full

17 Mr. Felton's opinions and reports and his deposition testimony.

18 And so our prospect of what would happen in that instance would

19 be we would get whatever information on the qualifications and

20 work of this expert; we would file our motions in limine on the

21 13th or 14th -- whatever that date is -- and I presume that we

22 would treat it just like it was -- whether it was Mr. Felton or

23 Mr. Monteleone, the issues apply.

24     So from our perspective, we would be moving to preclude

25 the opinions and testimony that are contrary to the *Daubert*

1    report and contrary to the summary judgment opinion of the

2    Court, and then and only then would we want to go forward with

3    a deposition of the witness relating to qualifications and a

4    potential additional *Daubert* motion.  So I just wanted to put

5    that out there.

6            MR. DAVISSON:  Your Honor, notwithstanding the fact

7    that my offer has apparently not been well-received, the

8    reality is that a substitute expert -- assuming perfect due

9    diligence and assuming all other factors were complied with, a

10   substitute expert cannot just parrot the information provided

11   because every person, every human being, expresses themself in

12   a different way.

13       So when these suggestions are made that they can't deviate

14   from the script, it's hard for me to understand how that works

15   exactly in the real world.

16           THE COURT:  I have a hard time as well.

17       But ultimately, what I do know is we have 13 opinions that

18   were rendered.  We have a *Daubert* order that addresses a number

19   of these opinions.  And at this point, the defense is seeking

20   to provide a substitute expert with opinions.

21       What I am saying is, to the extent that this expert

22   essentially adopts the opinions of Mr. Felton, then we are

23   fine.  We should have no problem.  To the extent he deviates,

24   then it is a problem because then, now, we essentially have

25   another bite at the apple, and the Court doesn't believe that

1   that's fair, particularly in view of the concerns regarding

2   lack of diligence.

3        And so all we need at this point to assist us to move

4   forward is the report of the substitute expert so that then the

5   Plaintiffs can compare those opinions with the ones that have

6   been previously furnished.  To the extent that the Plaintiff is

7   in a position to identify new opinions that are markedly,

8   substantially, significantly, in a meaningful way, different,

9   then we will have a problem.  And then at that point, then we

10   will have a situation where the Plaintiff can point to that as

11   creating likely prejudice or problems.  And so, in my view,

12   this is a commonsense way to try to sort this out at this

13   point.

14        MR. DAVISSON:  I understand the solution, Your Honor.

15   I was just trying to cut to it and make a proposal that I

16   thought the other side could live with.  But if that's how you

17   want to proceed, I am more than happy to proceed that way.

18        THE COURT:  If there's something that you work out

19   with opposing counsel other than this proposal, then, please, I

20   invite you, I encourage you, to come to another type of

21   accommodation or solution.

22        MR. DAVISSON:  That's what I was trying to do, Your

23   Honor, and that's why I wanted to talk to my client because I

24   can't do this without permission.

25        THE COURT:  Let me ask you.  Is there some reason

1    that you couldn't do this between now and tomorrow by close of

2    business?

3          MR. DAVISSON:  I just don't know if I am going to

4    reach the people I need to reach between now and tomorrow.  I

5    can certainly try.  I have their cell phones.  I am not

6    suggesting I wouldn't try to reach them.  I probably would be

7    able to reach them.  I know they are flying out here on Sunday

8    to go to the mediation on Monday; therefore, I know I will be

9    seeing them.

10          THE COURT:  Let me ask you.  Would there be any

11   problem if this order were to permit this report to be

12   furnished to you by Monday?

13          MR. GOLDFARB:  To be honest, we are going to mediate.

14   Would we would like the order, in any event, in this is the

15   stand-in or not --

16          THE COURT:  The opinion, you mean?

17          MR. GOLDFARB:  Yeah.  If we find out -- if it

18   demonstrates -- I have to say this, because I read again the

19   reply brief, which we had no ability to respond to yet.  And on

20   the last page, one of the arguments is that the Court has not

21   yet excluded any of Mr. Felton's opinions regarding National

22   Union's intent.

23       And it's important to say this because they put that in

24   there, but the reason the Court hasn't excluded those is

25   because Mr. Felton hasn't given any opinions regarding intent.

 1    In his deposition, he disclaimed giving any opinions regarding

 2    intent.  And so what we have here is National Union, throughout

 3    this four-and-a-half-month process, wants to move away from

 4    someone giving opinions regarding claims handling and bad

 5    faith, and now they want to have an expert who is going to give

 6    opinions bearing on the issue of intent and state of mind, a

 7    completely different topic that Mr. Felton disclaimed in his

 8    deposition.  And so, yes, the report, the opinions, whatever it

 9    is that he has, are simply going to demonstrate that.

10         What I was pointing out and what Mr. Davisson is talking

11    about is simply, from the beginning, we have said, "Look, we

12    are not trying to disadvantage you.  If you want someone who is

13    simply going to adopt what Mr. Felton has and put you in

14    exactly the same position you would be in if Mr. Felton was

15    standing here healthy today" -- we didn't have a problem with

16    it.

17         But now, honestly, we have spent over $100,000 briefing

18    this issue back and forth because National Union didn't want to

19    agree to that back in April.  So we are prejudiced in that

20    regard.  We are prejudiced in spending all of our time the last

21    four months.

22         And I do appreciate the Court's wanting to see that and

23    get to the bottom of it to make a decision, and we are willing

24    to wait to Monday to see what happened in order to move the

25    ball forward.

1          MR. DAVISSON:  Your Honor, I cannot believe that

2     representation has just been made to this Court, and I'll tell

3     you why.

4          THE COURT:  You know what --

5          MR. DAVISSON:  It is an ad hominem argument, first of

6     all, like we are trying to set them up, which is not true.

7          There's correspondence I just read on the train.  There's

8     e-mails, which I read on the way down here, which are replete

9     with us telling them we are just trying to get a new expert who

10    will substantially adopt Felton's report, recognizing that you

11    cannot parrot verbatim what the man has said because everybody

12    talks differently.

13         THE COURT:  I don't think anyone would dispute that

14    you can't parrot what someone else says, the selection of

15    words.  But that's not what we are talking about here.

16         We are talking about 13 particular opinions and a court

17    order that addresses a number of those opinions, so it leaves a

18    number of opinions unscathed and available to utilize.  And

19    then we have a new substitute expert, who now has taken a look

20    at what we have and has rendered his opinions.

21         To the extent that they parrot or they mirror or they are

22    basically the same as the opinions themselves, the basic

23    opinions, like I said, we don't have a problem.  But to the

24    extent that we now have new opinions, that's different than

25    talking about, "Well, you are not going to be able to use the

1    exact same words; you are not going to be able to parrot the

2    same terms."  I realize that.  Everybody appreciates that.  But

3    what we do need is a mirroring of the opinions that are still

4    left intact.

5              MR. DAVISSON:  I understand that.  I am not arguing

6    that point, Your Honor.  What I am arguing about is this

7    nonsense that he wanted to compromise.  I just looked at his

8    letter on the way down here.  He did not want to compromise.

9              THE COURT:  The last time we were here, the Court

10   made an observation about what this Court has been presented

11   with and how, for whatever reasons, there is a gulf, there is a

12   divide, and it is one that hasn't helped move this case

13   forward.  This is yet another example of this divide that

14   exists that prevents the parties from working.

15        I am hoping that, after this hearing, that you can erase

16   what has been said during this hearing and just look forward to

17   the mediation on Monday.  Because rather than at the last

18   second have both of you with angst and anger and feelings of

19   disgust for the other side -- that's not going to lend itself

20   to a productive mediation on Monday.

21             MR. DAVISSON:  Understood, Your Honor.  But there's

22   eight and a half million reasons that they are doing this

23   because they are building their damage case by spinning

24   attorney's fees because they get some portion of their fees

25   under *Brandt*, per the judge's ruling.

1          THE COURT:  See?  And you just didn't listen to me.

2    I am asking you to erase that in this moment.  You can put that

3    back in your brain come Tuesday.  But at this point, I would

4    like for you all to make mediation meaningful and as productive

5    as possible.

6          MR. DAVISSON:  It will be meaningful, and we will

7    work hard to get the case revolved, Your Honor.

8          THE COURT:  I appreciate that.

9          MR. GOLDFARB:  As will we, Your Honor.

10         THE COURT:  Thank you all.

11      So at this point, I will give you until Monday morning,

12    then, to provide that in the event that you wish to go that

13    route.

14         MR. DAVISSON:  Thank you, Your Honor.

15         THE COURT:  Good luck on Monday.

16         MR. GOLDFARB:  Thank you, Judge.

17         MS. SINGH:  Just to clarify, Your Honor, we then have

18    two weeks after Monday to get back to the Court in a briefing?

19         THE COURT:  Yes.  And then I will issue a follow-up

20    order after I receive that as to what we will do next.

21         MR. GOLDFARB:  Thank you, Your Honor.

22         MS. SINGH:  Thank you, Your Honor.

23      (End of proceedings at 1:56 p.m.)

24                         -o0o-

25

1              C-E-R-T-I-F-I-C-A-T-I-O-N

2

3          I hereby certify that I am a duly appointed,

4    qualified and acting official Court Reporter for the United

5    States District Court; that the foregoing is a true and correct

6    transcript of the proceedings had in the aforementioned cause;

7    that said transcript is a true and correct transcription of my

8    stenographic notes; and that the format used herein complies

9    with rules and requirements of the United States Judicial

10   Conference.

11              DATED:  September 25, 2015, at San Diego,

12   California.

13

14                      /s/  Chari L. Possell
                        _____
15                      Chari L. Possell
                        CSR No. 9944, RPR, CRR
16

17

18

19

20

21

22

23

24

25